Jessie STANSBERRY d/b/a Universal Studio et al., Plaintiffs-Appellees,

v.

John HOLMES, Harris County District Attorney, Jack Heard, Sheriff of Harris County, Texas, each in their official capacities, Defendants-Appellants.

No. 79–3606.

United States Court of Appeals, Fifth Circuit.

March 17, 1980.

As Amended on Denial of Rehearing and Rehearing En Banc April 28, 1980.

Joe Resweber, County Atty., Anthony D. Sheppard, Stephen Neel, T. M. Kemper, Asst. County Attys., Houston, Tex., for Heard.

Clyde F. DeWitt, III, Asst. Dist. Atty., Houston, Tex., for Holmes.

Stanley G. Schneider, Houston, Tex., for plaintiffs-appellees.

Before TUTTLE, FAY and THOMAS A. CLARK, Circuit Judges.

TUTTLE, Circuit Judge:

This case involves an appeal from a district court's order permanently enjoining the enforcement of Regulations §§ 4(k) and (*l*) of the Regulations of Harris County, Texas dealing with the zoning of certain sexually oriented commercial enterprises. We reverse the decision of the trial court.

For a number of years Texas municipalities have sought to regulate the location or operation of sexually oriented businesses.[1] Faced with the problem of many of those businesses moving outside city limits, in May 1979 the Texas Legislature enacted enabling acts 2372 v and w authorizing the commissioners court of any county to adopt regulations in the unincorporated territory of the county governing the operation of massage establishments and the location "of massage parlors, nude studios, modeling studios, love parlors, and other similar commercial enterprises whose major business is the offering of a service which is intended to provide sexual stimulation or sexual gratification to the customer." [See Appendix A].

Pursuant to that authority, the Commissioners Court of Harris County, Texas in September 1979 adopted regulations restricting the location of certain sexually oriented commercial enterprises, to be effective in October 1979. [See Appendix B]. In part, the regulations made it unlawful for any person to operate a sexually orient-

---

1. *See, e. g., Patterson v. City of Dallas*, 355 S.W.2d 838 (Tex.Civ.App.1962), *appeal dismissed*, 372 U.S. 251, 83 S.Ct. 873, 9 L.Ed.2d 732 (1963) (Dallas); *City of Houston v. Shober*, 362 S.W.2d 886 (Tex.Civ.App.1962) (Houston); *Holt v. City of San Antonio*, 547 S.W.2d 715 (Tex.Civ.App.1977) (San Antonio).

ed commercial enterprise without a valid permit issued by the sheriff and stated that no permit could be issued unless the applicant could show that the enterprise was at least 1500 feet from a child care facility, a church or place of worship, a dwelling, public building or public park, school, hospital or a building in which alcohol was sold. A "sexually oriented commercial enterprise" was defined as a "massage parlor, nude studio, modeling studio, love parlor and any other similar commercial enterprise whose major business is the offering of a service which is intended to provide sexual stimulation or sexual gratification to the customer." The regulations specifically exempted any bookstore, movie theatre or business licensed to sell alcoholic beverages; any business operated by or employing licensed psychologists, licensed physical therapists, licensed athletic trainers, cosmetologists or barbers; or any business employing or operated by licensed physicians or licensed chiropractors.

The penalty for non-compliance with the regulation was a penal sanction, a class B misdemeanor,[2] and the operation of any such sexually oriented commercial enterprise without a permit was declared a public nuisance.

On October 10, 1979, the plaintiffs filed suit challenging the ordinance under 42 U.S.C. §§ 1981, 1983, 1985, and 1986. They charged, among other things, that the Texas Act as applied through this local ordinance constituted the taking of property without due process or compensation; that the Act and ordinance were unconstitutionally vague; and that the Act and ordinance violated the First Amendment and the Due Process Clause of the Fourteenth Amendment. The trial court granted a temporary restraining order. After a hearing on the merits, the trial court entered an order decreeing that the definitions of "school" in section 4(k) and "sexually oriented commercial enterprise" in section 4(*l*)[3] were unconstitutionally vague and overbroad. Specifically, the court found that the definition of "sexually oriented commercial enterprise" could encompass such businesses as art schools and dancing studios which the court described as "perfectly legitimate commercial enterprises." The court also pointed out that the definition of "school" was unclear since the definition might apply to such enterprises as bartending or Karate schools. The trial court also stated that the regulations "possibly" violated the Fifth Amendment privilege against self-incrimination, since any people who admitted that they operated a sexually oriented commercial enterprise as defined in § 4(*l*), admitted in effect that they were violating § 43.02 of the Texas Penal Code which makes prostitution a crime.[4] The trial court therefore granted a permanent injunction prohibiting enforcement of §§ 4(k) and (*l*) of the regulations of Harris County. This appeal followed.[5]

The appellants assert initially that the case does not contain any First Amendment issues, but involves rather an exercise of

---

**2.** According to § 12.22 of Vernon's Texas Code Annotated-Penal (1974), a class B misdemeanor is punishable by a fine not exceeding $1,000 and a jail sentence not exceeding 180 days.

**3.** Section 4(k) states:

"School" means a building where persons regularly assemble for the purpose of instruction or education together with the playgrounds, dormitories, stadiums, and other structures or grounds used in conjunction therewith;

Section 4(*l*) states:

"Sexually oriented commercial enterprise" means a massage parlor, nude studio, modeling studio, love parlor and any other similar commercial enterprise whose major business is the offering of a service which is intended to provide sexual stimulation or sexual gratification to the customers.

**4.** Texas Penal Code § 43.02 reads in part:
(a) A person commits an offense if he knowingly:
(1) offers to engage, agrees to engage, or engages in sexual conduct for a fee; or
(2) solicits another in a public place to engage with him in sexual conduct for hire.

**5.** The court apparently found no merit in the other arguments of the plaintiffs. The order states that the enabling act is constitutional, and cites an opinion holding that the Harris County massage parlor regulations are a constitutional exercise of the police power. *See Magdalene Harper v. John Lindsay*, No. 77–1435 (S.D.Tex., May 31, 1978).

the state's police power through zoning.[6] Since the regulations were tailored to avoid any effect on speech protected by the First Amendment, they contend that the regulations must be analyzed by the standard traditionally applied to zoning regulations— whether the regulations are arbitrary and unreasonable, having no rational relationship to a legitimate governmental interest. *See Stone v. City of Maitland*, 446 F.2d 83, 87 (5th Cir. 1971). The appellants then argue that the district court erred in holding that the definitions of "school" and "sexually oriented commercial enterprise" are vague and overbroad.

The appellees assert that the regulations are, as found by the trial court, vague and overbroad, failing to define the terms "school" and "sexually oriented commercial enterprise" so that a person of ordinary intelligence has fair notice of the conduct that is proscribed. They also contend that the regulations conflict with an individual's Fifth Amendment right against self-incrimination because of the similarity between the definition of a sexually oriented commercial enterprise and the Texas Penal Code's definition of prostitution. *See* Texas Penal Code § 43.02, *supra* note 4.

## I.

■ It is important to note at the outset that the regulations in question do not attempt to zone businesses such as bookstores or movie theatres, which fall within the protection of the First Amendment. In *Young v. American Mini Theatres, Inc.*, 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310, *rehearing denied*, 429 U.S. 813, 97 S.Ct. 191, 50 L.Ed.2d 155 (1976), the Supreme Court held that "adult" theatres may be subject to municipal zoning regulations, despite the traditional rule that expression may not be classified on the basis of content. 427 U.S. at 72–73, 96 S.Ct. at 2453. Although *Young* affords certain "speech" activities lesser

protection than under traditional First Amendment principles, it nonetheless requires a more stringent review than is applicable to regulations zoning conduct not protected under the First Amendment. *See id.*; Note, Developments in the Law—Zoning, 91 Harv.L.Rev. 1427, 1560 (1978). However no First Amendment interests are at stake here; we therefore analyze the provisions by the traditional standards applicable to zoning regulations.

## II.

■ If the district court, in calling the ordinance "overbroad" and "vague" means that this ordinance is beyond the police power, it is certainly mistaken. In our age, zoning has become "the predominant technique by which governments . . . [exercise] . . . control over private property." Note, Developments in the Law—Zoning, 91 Harv.L.Rev. 1427, 1429 (1978). With the rapid development of a highly urban and industrialized society, the importance of zoning as a form of land use control has increased. The past decade has seen a growing popular acceptance of the notion that infinite uncontrolled growth often produces the unsightly sprawl that threatens to turn every major street into a neon commercial carnival.

The Supreme Court has recognized the key role that the zoning power can play in maintaining for citizens an acceptable quality of life. Zoning is the local community's most powerful weapon against a wave of commercialism that threatens to permeate not only the major thoroughfares but the quiet residential neighborhoods with their parks, trees, and children at play. Without the power to zone, every person would be at the mercy of the entrepreneur who chose to develop on the next corner. Zoning provides one of the firmest and most basic of the rights of local control. Since 1928, the

---

**6.** Several of the cases relied upon by the district court involved regulations affecting speech protected by the First Amendment. *See Young v. American Mini Theatres*, 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310, *rehearing denied*, 429 U.S. 873, 97 S.Ct. 191, 50 L.Ed.2d 155 (1976); *Grayned v. City of Rockford*, 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972). The appellants are apparently concerned that the court might apply the stricter standard applicable to cases involving protected speech.

Supreme Court has never held that a zoning measure exceeded the police power.[7] In *Berman v. Parker*, 348 U.S. 26, 33, 75 S.Ct. 98, 102, 99 L.Ed. 27 (1954), the Court held that land use regulations may promote "values [which] are spiritual as well as physical, aesthetic as well as monetary." In *Village of Belle Terre v. Boraas*, 416 U.S. 1, 9, 94 S.Ct. 1536, 1541, 39 L.Ed.2d 797 (1974), the Court said that zoning could be used to create and promote living areas that protect "family values [and] youth values." Given these pronouncements and the importance of zoning as an instrument of community control over private property, this Court has decided that the proper standard of review of zoning ordinances is limited to the question "whether the action . . . is arbitrary and capricious, having no substantial relation to the general welfare." *South Gwinnett Venture v. Pruitt*, 491 F.2d 5, 7 (5th Cir. 1974), *cert. denied*, 419 U.S. 837, 95 S.Ct. 66, 42 L.Ed.2d 64 (1974). *See also, Blackman v. City of Big Sandy, Texas*, 507 F.2d 935 (5th Cir. 1975).[8] The requirements of procedural due process also must be observed,[9] and a zoning decision cannot violate the Fifth Amendment which says that "private property [shall not] be taken for public use, without just compensation."[10]

■ In this case, the zoning measures at issue clearly overcome the "arbitrary and capricious" standard. Not only were the State of Texas and Harris County's regulations not arbitrary and capricious, they were a rational and understandable effort to deal with a perceived evil that affected living conditions in the area. Nor was the county under a "compulsion to deal with all other evils that are seen to be equally serious" in the same or other ordinances to pass the test of constitutionality. *See Stone v. City of Maitland*, 446 F.2d 83, 88 (5th Cir. 1971). The county clearly had the power to make the judgment it did in this case in an attempt to insure a more aesthetic quality of life for its people.

■ We also disagree with the district court's finding that the terms "school" and "sexually oriented commercial enterprise" are impermissibly vague. Any statute or ordinance which proscribes certain conduct must be sufficiently definite to "give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute," and to avoid the possibility of arbitrary and erratic arrests and convictions. *Papachristou v. City of Jacksonville*, 405 U.S. 156, 162, 92 S.Ct. 839, 843, 31 L.Ed.2d 110 (1971). A provision need not, however, be cast in terms that are mathematically precise; it need only · give fair warning of the conduct proscribed, in light of common understanding and practices. *Grayned v. City of Rockford*, 408 U.S. 104, 110, 92 S.Ct. 2294, 2300, 33 L.Ed.2d 222 (1971); *United States v. National Dairy Products Corp.*, 372 U.S. 29, 32, 83 S.Ct. 594, 597, 9 L.Ed.2d 561 (1963); *United States v. Mikelburg*, 517 F.2d 246, 252 (5th Cir. 1975), *cert. denied*, 424 U.S. 909, 96 S.Ct. 1104, 47 L.Ed.2d 313 (1976). The district court found that the definition of "school" was vague because it could possibly include "Karate schools, bartending schools, and buildings where Dale Carnegie courses, t'ai, ch'i'

7. Some might consider an exception to be *Moore v. City of East Cleveland*, 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977), a recent case which involved a city single-family ordinance which created a very limited definition of what constituted a family. The ordinance was struck down by a plurality on the grounds that it chose "to regulate the occupancy of its housing by slicing deeply into the family itself." *Id.* at 498, 97 S.Ct. at 1935. That case thus struck the statute down, not because it exceeded the police power, but because it was too narrowly drawn. *See* Developments, p. 1443.

8. We do not address, of course, in this opinion, recent cases that attack the clear inequities promulgated by socially or class-oriented exclusionary zoning, nor do we endorse such a narrow standard of review in such cases. For an example of the attempts of recent state courts to grapple with the issue, *see Surrick v. Zoning Hearing Bd. of U. Providence Tp.*, 476 Pa. 182, 382 A.2d 105 (1977); *Southern Burlington County NAACP v. Township of Mt. Laurel*, 67 N.J. 151, 336 A.2d 713, *appeal dismissed*, 423 U.S. 808, 96 S.Ct. 18, 46 L.Ed.2d 28 (1975).

9. *See* Note, Developments in the Law—Zoning, 91 Harv.L.Rev. 1427, 1502–1549.

10. *See Ibid.*, pp. 1462–1502. We do not reach questions arising under this provision of the Constitution because since appellees prevailed on their due process claim, they did not urge this point before us. It remains open on remand to the district court.

dancing or hypnotism [are] taught." We disagree. The reference in the provision to "the playgrounds, dormitories, stadiums and other structures or grounds used in conjunction therewith" clearly narrows the definition to schools for primary, secondary, and college education. The definition, read as a whole, provides the necessary measure of certainty and is not unconstitutionally vague. The district court also held that section 4(1) defining "sexually oriented commercial enterprise" was "so vague and at the same time overbroad in its sweep that the police power might be used to harass perfectly legitimate commercial enterprises that engage in activities that may sexually stimulate the patrons or customers such as dancing studios, clubs featuring disco dancing or art schools where nude models are used." We do not agree with the trial court's reading of the definition. The definition is limited to businesses "whose *major business* is the offering of *a service which is intended* to provide sexual stimulation or sexual gratification." (Emphasis added.) By including the phrase "major business," the county commissioners have excluded businesses whose activities might incidentally cause sexual stimulation. Certainly no one would contend that the major business of an art school or dance studio was the provision of services intended for sexual gratification. Additional definiteness is provided by the fact that the section specifically list three types of regulated businesses—massage parlors, nude studios, and love parlors—and applies the definition to "any other similar commercial enterprise." We find that this definition is sufficiently clear and provides adequate warning of the proscribed conduct.

■ The district court also noted that the regulations possibly conflict with the Fifth Amendment right against self-incrimination because of the similarity between the definition of sexually oriented commercial enterprise and prostitution. The court cites *Marchetti v. United States*, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1967) as an indication of this conflict. In *Marchetti*, the Court held that a taxpayer could not be prosecuted for willful failure to report income from wagering, since wagering is prohibited by both state and federal law. *Id.* at 60–61, 88 S.Ct. at 709. The direct self-incrimination present in *Marchetti* is not, however, present in the instant case. The definition of "prostitution" is very narrow and specifically drawn. Although a "business whose major purpose is the provision of a service intended to provide sexual stimulation or gratification" would certainly include prostitution, the two are not synonymous. The definition in section 4(1) encompasses a much broader range of conduct. Thus, application for a permit under these regulations would in no way constitute an admission that an individual was engaged in prostitution.

The judgment is REVERSED and the case is REMANDED for further proceedings not inconsistent with this opinion.

## APPENDIX A

### An Act

relating to the authority of cities and counties to regulate the location of certain sexually oriented commercial activities; providing penalties.

Be it enacted by the Legislature of the State of Texas:

Section 1. (a) The legislature finds that the unrestricted location of certain sexually oriented commercial enterprises may be detrimental to the public health, safety, and welfare by contributing to the decline of residential and business neighborhoods and the growth of criminal activity. The purpose of this Act is to provide local governments a means of remedying this problem.

(b) This Act neither enhances nor diminishes the authority of local governments to regulate commercial enterprises covered by this Act with regard to matters other than their location.

Sec. 2. In this Act "city" means an incorporated city, town, or village and includes a home-rule city.

Sec. 3. (a) A city by ordinance or a county by order of the commissioners court may adopt regulations restricting the loca-

tion of massage parlors, nude studios, modeling studios, love parlors, and other similar commercial enterprises whose major business is the offering of a service which is intended to provide sexual stimulation or sexual gratification to the customer.

(b) Nothing in this Act is intended to authorize the regulation of any bookstore, movie theatre, or business licensed to sell alcoholic beverages, nor does it authorize regulation of any business:

(1) operated by or employing licensed psychologists, licensed physical therapists, licensed athletic trainers, licensed cosmetologists, or licensed barbers engaged in performing functions authorized under the license held; or

(2) operated by or employing licensed physicians or licensed chiropractors engaged in practicing the healing arts.

(c) City regulations apply only inside the city's corporate limits. County regulations apply only to the parts of the county outside the corporate limits of a city.

Sec. 4. (a) Regulations adopted under this Act may restrict the location of regulated enterprises to particular areas, restrict the density of regulated enterprises, or prohibit the operation of a restricted enterprise within a certain distance of a school, regular place of religious worship, residential neighborhood, or other specified land use the governing body of the city or county finds to be inconsistent with the operation of a restricted establishment.

(b) The city or county may require the obtaining of a permit for the operation of a restricted establishment. The city or county may charge a fee for the permit, but the fee may not exceed the actual cost of processing the permit application.

(c) A city that has in effect a comprehensive zoning ordinance adopted under Chapter 283, Acts of the 40th Legislature, Regular Session, 1927, as amended (Article 1011a, et seq., Vernon's Texas Civil Statutes), must comply with all applicable procedural requirements of that statute in adopting regulations under this Act within the scope of that statute.

Sec. 5. (a) A city or county may sue in the district court to enjoin the violation of a regulation adopted under this Act.

(b) Violation of a county regulation adopted under this Act is a Class B misdemeanor.

(c) In a city that has a comprehensive zoning ordinance as described in Subsection (c), Section 4, of this Act, a violation of an ordinance adopted under this Act is punishable by the same penalty prescribed for a violation of the zoning ordinance. In all other cities, violation of an ordinance adopted under this Act is a Class B misdemeanor.

Sec. 6. This Act does not legalize anything prohibited under the Penal Code or other state law.

Sec. 7. If any provision of this Act or its application to any person or circumstances is held invalid for any reason, the invalidity does not affect any other provision or application of this Act which can be given effect without the invalid provision or application, and to this end the provisions of this Act are declared to be severable.

Sec. 8. The importance of this legislation and the crowded condition of the calendars in both houses create an emergency and an imperative public necessity that the constitutional rule requiring bills to be read on three several days in each house be suspended, and this rule is hereby suspended, and that this Act take effect and be in force from and after its passage, and it is so enacted.

### APPENDIX B

### REGULATIONS OF HARRIS COUNTY, TEXAS FOR THE LOCATION OF CERTAIN SEXUALLY ORIENTED COMMERCIAL ENTERPRISES

Section 1. *Authority*

These Regulations are adopted by the Commissioners' Court of Harris County, Texas, acting in its capacity as the governing body of Harris County, Texas. Authority of Harris County to adopt these Regulations is House Bill No. 654, enacted by the 66th Legislature of the State of Texas and

signed by the Governor on or about May 17, 1979.

Section 2.  *Administration*

The Commissioners' Court hereby designates the Sheriff to inspect and issue permits pursuant to the above authority. The administration of these Regulations, including but not limited to issuance of permits and inspections hereunder, shall be performed by the Sheriff or his duly authorized deputy. Any peace officer certified by the State of Texas may enforce these Regulations.

Section 3.  *Area Covered By Regulations*

These Regulations apply only to the parts of the county outside the corporate limits of a city.

Section 4.  *Definitions*

As used in these Regulations:

(a) "Commissioners' Court" means the Commissioners' Court of Harris County, Texas;

(b) "County" means Harris County, Texas;

(c) "Church or place of religious worship" means a building in which persons regularly assemble for worship, intended primarily for purposes connected with faith, or for propagating a particular form of belief;

(d) "Child Care Facility" means a building used as a day nursery, children's boarding home, child placing agency or other place for the care or custody of children under fifteen years of age, licensed by the State of Texas pursuant to Article 4442a, Vernon's Texas Civil Statutes;

(e) "Dwelling" means a house, duplex, apartment, townhouse, condominium, mobile home or any other building used for residential purposes;

(f) "Hospital" means a building used to provide health services for human inpatient medical care for the sick or injured licensed pursuant to the Texas Hospital Licensing Law (Article 4437f Vernon's Texas Civil Statutes) or operated by an agency of the federal government, or a convalescent facility licensed pursuant to Article 4442c, Vernon's Texas Civil Statutes;

(g) "Person" means an individual, partnership, corporation, or other entity;

(h) "Public Building" means a building used by federal, state, or local government and open to the general public;

(i) "Public Park" means a tract of land maintained by the federal, state, or local government for the recreation and enjoyment of the general public;

(j) "Regulations" means Regulations of Harris County, Texas, for the Location of Certain Sexually Oriented Commercial Enterprises;

(k) "School" means a building where persons regularly assemble for the purpose of instruction or education together with the playgrounds, dormitories, stadiums, and other structures or grounds used in conjunction therewith;

(*l*) "Sexually Oriented Commercial Enterprise" means a massage parlor, nude studio, modeling studio, love parlor and any other similar commercial enterprise whose major business is the offering of a service which is intended to provide sexual stimulation or sexual gratification to the customer;

(m) "Sheriff" means the Sheriff of Harris County, Texas;

(n) "State" means the State of Texas;

(o) "City" means an incorporated city, town, or village and includes a home-rule city.

Section 5.  *Bookstores, etc. Excepted*

These Regulations do not apply to the following:

(a) Any bookstore, movie theatre, or business licensed to sell alcoholic beverages;

(b) Any business, operated by or employing licensed psychologists, licensed physical therapists, licensed athletic trainers, licensed cosmetologists, or licensed barbers performing functions authorized under the license held;

(c) Any business operated by or employing licensed physicians or licensed chiropractors engaged in practicing the healing arts.

Section 6. *Permit Required*

(a) It shall be unlawful for any person to own or operate a Sexually Oriented Commercial Enterprise at a location in the parts of the County outside the corporate limits of a city without a valid permit issued therefor by the Sheriff in accordance with the provisions of these Regulations.

(b) Before the issuance of a permit, the applicant must certify that the proposed Sexually Oriented Commercial Enterprise will be located a minimum of 1500 feet from the following, which the Commissioners' Court hereby finds to be inconsistent with the operation of a restricted establishment, to-wit:

(1) A child care facility;

(2) A church or place of religious worship;

(3) A dwelling;

(4) A hospital;

(5) A building in which alcoholic beverages are sold;

(6) A public building;

(7) A public park;

(8) A school.

(c) Subsection (b) of this Section 6 will apply to all Sexually Oriented Commercial Enterprises regardless of whether or not existing on the effective date of these Regulations. However, should any Court determine that such requirement is unconstitutional or invalid insofar as it applies to Sexually Oriented Commercial Enterprises existing on the effective date of these Regulations, then and in that event, the applicant may certify that the Sexually Oriented Commercial Enterprise was in existence on the effective date of these Regulations in lieu of making the certification pro-

vided for in said Subsection (b). Provided, however, that any permit issued on the basis of an application making a certification pursuant to this subsection (c) in lieu of certification under subsection (b) shall have written thereon "This permit is valid for only one (1) year from October 1, 1979."

(d) For the purposes of this section, measurements shall be made in a straight line, without regard to intervening structures or objects, from the nearest portion of the building or structure used by the restricted establishment to the nearest portion of the building, structure, or facility set forth in subsection (b).

Section 7. *Permit Displayed*

A Sexually Oriented Commercial Enterprise permit issued under these Regulations shall be displayed at all times in an open and conspicuous place in the restricted establishment for which it was issued.

Section 8. *Permit Application*

Any person desiring a Sexually Oriented Commercial Enterprise permit shall file a written application with the Sheriff on a form to be prescribed by him.

(a) The application shall set forth the following:

(1) The name of the applicant and whether the applicant is an individual, general partnership, limited partnership, corporation or other entity;

(2) The name under which the restricted establishment is to be operated and a general description of the service to be provided;

(3) The address and a full legal description of the parcel of land on which the restricted establishment is to be located;

(4) The name, residence address and telephone number, if any, of the manager or other individual to be principally in charge of the operation of the restricted establishment;

(5) Written declaration that the information contained in the application is true and correct, said declaration being duly dated and signed in the County. If the applicant is an individual, the application shall be signed and sworn to by the applicant. If the applicant is a partnership, the application shall be signed and sworn to by a partner thereof. If the applicant is a corporation or other entity, the application shall be signed and sworn to by an authorized officer of such corporation or entity.

(b) The application shall be accompanied by the following:

(1) A tender of the correct permit fee as hereinafter provided;

(2) A certified copy of the assumed name certificate filed in compliance with the Assumed Business or Professional Name Act (Vernon's Texas Codes Annotated, Business and Commerce Code, Chapter 36) if the applicant is to operate the restricted establishment under an assumed name;

(3) A certified copy of the article of incorporation, together with all amendments thereto, if applicant is a Texas Corporation;

(4) A certified copy of the certificate of authority to transact business in this State, together with all amendments thereto, if applicant is a foreign corporation;

(5) A certified copy of the certificate of limited partnership, together with all amendments thereto, filed in the Office of the Secretary of State under The Texas Limited Partnership Act (Article 6132a Vernon's Texas Civil Statutes), if the applicant is a limited partnership formed under the laws of Texas;

(6) A certified copy of the certificate of limited partnership and the qualification documents, together with all amendments thereto, filed in the office of the Secretary of State under the Texas Limited Partnership Act, if the applicant is a foreign limited partnership.

**Section 9.** *Investigation by Sheriff*

Upon receiving the application for a Sexually Oriented Commercial Enterprise permit, the Sheriff shall caused to be conducted an investigation for the purpose of determining whether or not such premises comply with the location requirements as set forth in these Regulations.

**Section 10.** *Issuance of Sexually Oriented Commercial Enterprise Permit*

(a) Any permit required by these Regulations shall be issued and signed by the Sheriff or his duly authorized deputy.

(b) The Sheriff shall issue a Sexually Oriented Commercial Enterprise permit within thirty (30) days of receipt of the application unless he finds that:

(1) The correct permit fee has not been tendered to the Sheriff;

(2) The operation as proposed by the application is prohibited by law;

(3) The applicant has made any false, misleading or fraudulent statement of fact in the permit application or in any document required by these Regulations to accompany the application;

(4) The application or the establishment location does not meet all requirements of these Regulations.

**Section 11.** *Fees*

To defray the actual cost of processing the Sexually Oriented Commercial Enterprise permit application, the permit fee shall be One Hundred ($100.00) Dollars.

**Section 12.** *Return of Fee*

No portion of any fee collected under these Regulations shall be returned after a permit has been issued or refused.

**Section 13.** *Transfer Prohibited*

A Sexually Oriented Commercial Enterprise permit is not transferable, assignable or divisible.

## Section 14. *Permit Valid for Specified Location*

Each permit issued under these Regulations shall be valid at the location therein specified, and not otherwise.

## Section 15. *Obtaining Permit by Fraud*

It shall be unlawful for any person to knowingly make any false, fraudulent or untruthful statement, either written or oral, or in any way knowingly to conceal any material fact, or to give or use any assued name or fictitious name other than one duly filed for record in compliance with the Assumed Business or Professional Name Act (Vernon's Texas Codes Annotated, Business and Commerce Code, Chapter 36).

## Section 16. *Fraudulent Use of Permit of Another*

It shall be unlawful for any person to use a Sexually Oriented Commercial Enterprise permit which has been issued to another person.

## Section 17. *Counterfeing, Changing, Defacing Permit*

It shall be unlawful for any person to counterfeit, forge, change, deface, or alter a Sexually Oriented Commercial Enterprise permit.

## Section 18. *Misdemeanor*

Violation of any provision of these Regulations is a Class B misdemeanor.

## Section 19. *Nuisance*

The operation of a Sexually Oriented Commercial Enterprise without a Sexually Oriented Commercial Enterprise Permit is hereby declared to be a public nuisance.

## Section 20. *Injunction*

The County may sue in District Court to enjoin the violation of any provision of these Regulations.

## Section 21. *Effect on State Law*

These Regulations do not legalize anything prohibited under the Penal Code or other State Law.

## Section 22. *Severability*

If any provision of these Regulations or its application to any person or circumstances is held invalid for any reasons, the invalidity does not affect any other provisions or application of these Regulations which can be given effect without the invalid provision or application, and to this end the provisions of these Regulations are declared to be severable.

## Section 23. *Effective Date*

These Regulations shall become effective on the fifteenth day of October, 1979.