T.K.'s VIDEO, INC., Plaintiff,

v.

DENTON COUNTY, TEXAS, Defendant.

No. 4:91cv49.

United States District Court,
E.D. Texas,
Sherman Division.

Feb. 26, 1993.

Malcolm Dade, Dallas, TX, Arthur M. Schwartz, Denver, CO, for plaintiff.

Kent Stanley Hofmeister, Robert Franklin Brown, Terrence S. Welch, Dallas, TX, Pamela A. Wells, Denton County Criminal Dist. Atty., Robert Smith Morris, Denton, TX, for defendant.

## MEMORANDUM OPINION AND ORDER

PAUL N. BROWN, District Judge.

Plaintiff brought this suit challenging the constitutionality of an order adopted by the Commissioners' Court of Denton County, Texas. Pending before the Court are motions for summary judgment filed by both the plaintiff and the defendant. After consideration of the motions, the responses, and the summary judgment evidence, the Court is of the opinion that the order is constitutional, with the exception of the following severable provisions: Sections 1A–4(a)(4) and (5) and 1A–4(k) and portions of 1A–4(a)(2) and (3).

### BACKGROUND

On February 5, 1990, the Commissioners' Court for Denton County, Texas, enacted a sexually oriented business order ("the order"). Plaintiff operates a business that currently sells, rents, and/or exhibits publications, books, films, and/or videos that meet the definitions of sexually oriented materials, adult arcade, adult bookstore or adult video store which sells or rents materials which depict or describe specified sexual activities or specified anatomical areas contained in the order. Plaintiff is not being prosecuted under the order and has not applied for a license under the order. Plaintiff has stipulated that it challenges only the facial constitutionality of the order and has dismissed all of its claims that make any applied constitutional challenge to the order. Furthermore, plaintiff makes no claims that the locational restrictions of the order apply to plaintiff.

The preamble to the order contains the following findings of the Commissioners' Court:

(1) that sexually oriented business are frequently used for unlawful sexual activities, including prostitution and sexual liaisons of a casual nature;

(2) the concern over sexually transmitted diseases is a legitimate health concern of the County which demands reasonable regulation of sexually oriented businesses in order to protect the health and well-being of the citizens;

(3) licensing is a legitimate and reasonable means of accountability to ensure that operators of sexually oriented businesses comply with reasonable regulations and to ensure that operators do not knowingly allow their establishments to be used as places of illegal sexual activity or solicitation;

(4) there is convincing documented evidence that sexually oriented businesses, because of their very nature have a deleterious effect on both the existing businesses around them and the surrounding residential areas adjacent to them, causing increased crime and the downgrading of property values;

(5) it is recognized that sexually oriented businesses, due to their nature, have serious objectionable operational characteristics, particularly when they are located in close proximity to each other, thereby contributing to urban and rural blight and downgrading the quality of life in the adjacent area;

(6) the Commissioner's Court desires to minimize and control these adverse effects

and thereby protect the health, safety, and welfare of the citizenry; protect the citizens from increased crime; preserve the quality of life; preserve the property values and character of surrounding neighborhoods and deter the spread of urban and rural blight; and

(7) it is not the intent of this order to suppress any speech activities protected by the First Amendment, but to enact a content neutral ordinance which addresses the secondary effects of sexually oriented businesses.

## DISCUSSION

### A. *Standing*

■ Denton County contends that plaintiff lacks standing to challenge the constitutionality of the order because plaintiff has not filed an application for a license and the lack of criminal prosecution by the county. "Although facial challenges to legislation are generally disfavored, they have been permitted in the First Amendment context where the licensing scheme vests unbridled discretion in the decisionmaker and where the regulation is challenged as overbroad." *FW/PBS Inc. v. City of Dallas,* 493 U.S. 215, 222, 110 S.Ct. 596, 603, 107 L.Ed.2d 603 (1990) *citing City Council of Los Angeles v. Taxpayers for Vincent,* 466 U.S. 789, 798 n. 15, 104 S.Ct. 2118, 2125 n. 15, 80 L.Ed.2d 772 (1984). The Court concludes that the plaintiff has standing for the facial challenges falling within this First Amendment context such as overbreadth, vagueness, improper vesting of unbridled discretion, lack of procedural safeguards, and for impermissible prior restraints.

### B. *Burden of Proof*

■ Plaintiff contends that Denton County has the burden of establishing the constitutionality of the order, since it infringes on the exercise of First Amendment rights. The Court agrees. "When a law infringes on the exercise of First Amendment rights, its proponent bears the burden of establishing its constitutionality." *Ass'n of Community Org. v. Mun. of Golden, Colo.,* 744 F.2d 739, 747 (10th Cir.1984).

■ Plaintiff also argues that in considering the constitutionality of the order the Court must begin with the presumption that the order is unconstitutional. Plaintiff is correct. While prior restraints are not unconstitutional *per se,* any system of prior restraint bears a heavy presumption against its constitutional validity. *FW/PBS, Inc. v. City of Dallas,* 493 U.S. 215, 222, 110 S.Ct. 596, 604, 107 L.Ed.2d 603 (1990).

### C. *Constitutionality*

Purpose and Intent of the Order:

The order states in Section 1A–1 that

(a) It is the purpose of this order to regulate sexually oriented businesses to promote the health, safety, morals, and general welfare of the citizens of the county, and to establish reasonable and uniform regulations to prevent the concentration of sexually oriented businesses within the county. The provisions of this order have neither the purpose nor effect of imposing a limitation or restriction on the content of any communicative materials, including sexually oriented materials. Similarly, it is not the intent nor effect of this order to restrict or deny access by adults to sexually oriented materials protected by the First Amendment, or to deny access by the distributors and exhibitors of sexually oriented entertainment to their intended market. The promotion of obscene material (not protected by the first Amendment) is enforceable through separate criminal sanctions under the penal code.

The minutes of the Denton County Commissioners' Court reflect that before enacting the order, the court considered studies by the cities of Austin, Texas; Amarillo, Texas; Beaumont, Texas; Houston, Texas; Indianapolis, Indiana; Los Angeles, California; Oklahoma City, Oklahoma; Phoenix, Arizona; and, Seattle, Washington, as well as other evidence concerning the effects of sexually oriented businesses on surrounding neighborhoods and the community. These studies and the other evidence which the Commissioners' Court had before it was relevant to the problems that the order addresses, supports the findings and conclusions set forth

in the preamble to the order and a finding that the county has a substantial interest in the regulation of sexually oriented businesses. Furthermore, the law of the State of Texas now provides for the regulation by counties of the operation as well as the location of sexually oriented businesses.[1] The Court finds that the order is not aimed at the content of the materials displayed and sold by plaintiff. Although the order only addresses the effects of sexually oriented businesses on the community and not the content of the materials, there is no doubt that its terms have an incidental impact on expression that is protected by the First Amendment. The law is clear that the government may not restrict or deny access by adults to sexually oriented materials protected by the First Amendment. On the other hand, the law is also clear that those engaged in the business of dispensing sexually oriented materials are subject to "content-neutral time, place, and manner regulations ... so long as they are designed to serve a substantial governmental interest and do not unreasonably limit alternative avenues of communication." *City of Renton v. Playtime Theatres, Inc.,* 475 U.S. 41, 45, 106 S.Ct. 925, 928, 89 L.Ed.2d 29 (1986); *SDJ, Inc. v. City of Houston,* 837 F.2d 1268, 1273 (5th Cir.1988).

■ Because of the incidental impact of the order on expression that is protected by the First Amendment, it is appropriate that the Court analyze its constitutionality under the four-part test of *United States v. O'Brien,* 391 U.S. 367, 377, 88 S.Ct. 1673, 1679, 20 L.Ed.2d 672 (1968). Under *O'Brien,* regulation is justified despite its impact on the First Amendment "[1] if it is within the constitutional power of the government; [2] if it furthers an important or substantial governmental interest; [3] if the governmental interest is unrelated to the suppression of free expression; and [4] if the incidental restriction on ... First Amendment freedoms is no greater than is essential to the furtherance of that interest." *O'Brien,* 391 U.S. at 377, 88 S.Ct. at 1679.

■ Applying *O'Brien,* it is clear that the police power of the county encompasses the power to enact a regulatory ordinance such as the one at issue. The county's interest in prevention of sexual disease and illegal sexual activity and in minimizing the effects of sexually oriented businesses on the community are important and substantial. *See Young v. American Mini Theatres, Inc.,* 427 U.S. 50, 61, 96 S.Ct. 2440, 2448, 49 L.Ed.2d 310 (1976). The county's intent as expressed in the order and indicated by the minutes of the meetings of the County Commissioners' Court in which the proposed order and its adoption were discussed is unrelated to the suppression of free expression. Thus, the first three factors of *O'Brien* are met. In determining whether the fourth factor has been met, an analysis of each challenged section must be made.

Definitions and Terms of the Order

■ Plaintiff challenges certain definitions and terms contained in the order as being unconstitutionally vague and overbroad. Definitions and terms used, however, are designed to give a person of ordinary intelligence fair notice of what conduct is regulated and forbidden in light of common understanding and practices. *Stansberry v. Holmes,* 613 F.2d 1285, 1290 (5th Cir.1980). The challenged definitions and terms within the order are virtually identical to definitions and terms upheld in *Dumas v. City of Dallas,* 648 F.Supp. 1061 (N.D.Tex.1986) and many of these provisions have been approved by the Supreme Court. *Young v. American Mini Theatres, Inc.,* 427 U.S. 50, 61, 96 S.Ct. 2440, 2448, 49 L.Ed.2d 310 (1976); *City of Renton v. Playtime Theatres,* 475 U.S. 41, 45, 106 S.Ct. 925, 928, 89 L.Ed.2d 29 (1986). The Court is of the opinion that all of the challenged terms and definitions contained in the Denton County order are not unconstitutionally vague or overbroad.

The Licensing Scheme

■ The Denton County order is modeled after the City of Dallas ordinance considered by Judge Buckmeyer in *Dumas* and in part found to be constitutional by the Supreme Court in *FW/PBS, Inc. v. City of Dallas,* 493 U.S. 215, 110 S.Ct. 596, 107 L.Ed.2d 603

---

1. See Tex.Loc. Gov't Code Ann. §§ 243.001–243.- 011 (Vernon 1988).

(1990). However, the licensing requirements of the Denton County order are considerably broader than its Dallas counterpart.[2]

Section 1A–4 of the order provides as follows:

(a) The following are required to be licensed:

(1) All owners, clerks, and employees of a sexually oriented business are required to be licensed to operate or work in said business.

(2) All corporations, stockholders, or directors of any sexually oriented business and their employees.

(3) All partners and limited partners in any sexually oriented business and their employees.

(4) All equity holders of any sexually oriented business and their employees.

(5) All real property owners, stockholders, executive officers, corporations, partners, limited partners or equity holders and lien holders and their employees which are *associated* with any sexually oriented business requiring a license under this Order. (emphasis added).

■ Section 1A–4(a)(1) requires "all owners, clerks, and employees" to be licensed. The requirement that all owners of a sexually oriented business be licensed is reasonable. It serves as a means to enhance the likelihood that owners of the business will comply with the order's regulations and will not knowingly allow their establishments to be used as places of illegal sexual activity or solicitation. The requirement that clerks and employees of a sexually oriented business be licensed is also reasonable. This requirement bears a reasonable relationship to the stated purpose of the order by preventing the spread of sexually transmitted diseases and illegal sexual activity. Both requirements are narrowly tailored and impose no greater restriction on First Amendment freedoms than is necessary to further the county's substantial interest.

■ Section 1A–4(a)(2) requires "all corporations, stockholders, or directors ... and their employees" to be licensed. The licensing requirement for corporations and directors of corporations of sexually oriented establishments is constitutional. Officers and directors are legally responsible for the corporations they control and manage and thus the county's interest in compliance is present and enhanced by such a regulation. However, stockholder licensing imposes a greater restriction than is necessary. Under the order, all stockholders regardless of their interest must be licensed even if their interest is merely *de minimis* and they have nothing to do with the actual operation of the business. The Court concludes that Section 1A–4(a)(2) is constitutional with the exception of the term "all ... stockholders."

■ Section 1A–4(a)(3) requires that "all partners and limited partners ... and their employees" be licensed. Once again, requiring partners to be licensed furthers the county's interest in compliance because partners exercise managerial control over the entity. However, limited partners traditionally do not have a managerial role in the enterprise and under the law lose their limited partner status if they engage in management of the partnership. This requirement is too restrictive. Thus, Section 1A–4(a)(3) is constitutional with respect to "partners," but unconstitutional with respect to "limited partners."

■ Section 1A–4(a)(4) requires "all equity holders ... and their employees" to be licensed.[3] This section is not narrowly tailored to advance a substantial interest. Under the order, any person and such person's employees who has *any* equity interest in a sexually oriented business would have to be licensed, including *de minimis* equity holders and those having nothing to do with the actual operation of the business.

2. The Dallas Ordinance provides in Section 41A–4 "[I]f a person who wishes to operate a sexually oriented business is an individual, he must sign the application for a license as applicant. If a person who wishes to operate a sexually oriented business is other than an individual, each individual who has a 20 percent or greater interest in the business must sign the application for a license as applicant ..."

3. "Equity holders" is not defined in the order.

■ Section 1A–4(a)(5) requires a license for all real property owners, stockholders, executive officers, corporations, partners, limited partners or equity holders and lien holders and their employees which are associated with any sexually oriented business requiring a license under the order. This section is unconstitutional because it is overbroad, vague, and not narrowly tailored to serve a substantial interest.[4]

■ Section 1A–4(b) requires all persons working for a sexually oriented business to wear an appropriate identification tag showing that he or she is currently licensed. It is important for the county to know the identity of the employees when they are working at the business. This requirement bears a rational relationship to the legitimate regulation of sexually oriented businesses. It is narrowly tailored and imposes the least restriction necessary to further the substantial interest of the county.

Notice Requirements and Other Duties of Applicants

■ Sections 1A–4(i), (j), and (k) impose certain notice requirements on an applicant for a sexually oriented business license. Section 1A–4(i) requires license applicants to place signs in the establishment in question and along the establishment's public road stating "sexually oriented business license application pending." Section 1A–4(j) requires license applicants to publish notice of the license application in two consecutive issues of a newspaper of general circulation in Denton County disclosing the pending application of a sexually oriented business, its location, and its owners. Section 1A–4(k) requires written notice of the filing of an application for a sexually oriented business to be sent to all owners of real property lying within one thousand feet of the property on which the license is requested.[5] The Court concludes that Sections 1A–4(i) and 1A–4(j) are constitutional because they promote the county's legitimate interest in ensuring compliance with the order's locational restriction by making it more likely that violations will be brought to the attention of the County Director of Public Works (the official authorized to issue licenses) and is sufficiently narrowly tailored to meet that goal.

■ However, the written notice requirement of 1A–4(k) is not narrowly tailored and is thus unconstitutional. Denton County contends that the purpose of the written notice requirement of Section 1A–4(k) is to ensure that locational violations of the order be brought to the attention of the County Director of Public Works prior to license approval. Under this provision, the applicant is required to get the name and address of each affected taxpayer from the last approved county tax roll and mail such notice to the affected real property owners. Although compliance with the order is a substantial goal, Sections 1A–4(i) and 1A–4(j) accomplish the same governmental interest in a much less intrusive manner.

■ Section 1A–4(a)(d) and (h) require an applicant to submit a plan of the proposed establishment and two photographs of each applicant. This requirement serves the county's interest in compliance and is constitutional. *See Dumas*, 648 F.Supp. at 1076.

Restrictions on License Issuance

■ Section 1A–5 authorizes the County Director of Public Works (the "Director") to grant or deny the issuance of a sexually oriented business license. It provides, however, that license approval is mandatory unless one of ten objective exceptions exists. Any license requirement for an activity related to expression must contain narrow, objective, and definite standards to guide the licensing authority. *Dumas*, 648 F.Supp. at 1072 (citing *Shuttlesworth v. City of Birmingham*, 394 U.S. 147, 149, 89 S.Ct. 935, 938, 22 L.Ed.2d 162 (1969)). The factual basis necessary for determining whether any of these exceptions are applicable "is either implicitly obvious, as in what constitutes 'false information' or information 'reasonably

---

**4.** The term "associated" is not defined and it is unclear under the order whether such associated entities can exercise any control over a sexually oriented business.

**5.** Section 1A–4(k) requires the applicant to obtain the names of all affected taxpayers from the last approved county tax roll for the purposes of satisfying the mailing requirement.

necessary' for an application, or ascertainable through reference to other sources of law," such as whether an applicant has been convicted of certain criminal offenses. *See FW/PBS*, 837 F.2d 1298, 1306 (5th Cir.1988). Therefore, the order "relies on standards that are 'susceptible of objective measurement' and thus consistent with the First Amendment." *Id. See also Keyishian v. Board of Regents*, 385 U.S. 589, 603–05, 87 S.Ct. 675, 684, 17 L.Ed.2d 629 (1967).

■■■■ Furthermore, each of the order's exceptions to mandatory approval is designed to serve the county's substantial interest in regulating such businesses. With the exception of the provision of the order authorizing denial of a license based upon non-compliance with the order's notice requirements [Sections 1A–4(i)–(k) ], the order's exceptions to mandatory approval are virtually identical to provisions specifically upheld in *Dumas*. *Dumas*, 648 F.Supp. at 1072–73.[6] Thus, this aspect of the order is constitutional.

License Fee

■■■■ In general, a fee to cover the administrative cost of licensing is permissible. The $500 fee for the licensing of the business is reasonably related to the cost associated with the processing of the license and is constitutional. *See Dumas*, 648 F.Supp. at 1071–72. Likewise, the $50 fee for the licensing of an employee is reasonably related to the administrative cost of issuing the license and is also constitutional. The fee requirements of the order do not impermissibly exact a fee for the exercise of First Amendment rights in violation of the First Amendment.

Inspection Requirements

■■■■ The order authorizes the inspection of a licensed business whenever the premises are occupied or open for business. Such a provision is a constitutional means of enforcing the regulatory standards of the order. *See FW/PBS*, 837 F.2d at 1306. "Sexually

oriented businesses face a degree of regulation that renders [this] inspection provision presumptively reasonable." *FW/PBS*, 837 F.2d at 1306. The Court concludes that these provisions of the order are constitutional.

Suspension and Revocation of Licenses

■■■■ The order's provisions authorizing the Director to suspend and revoke licenses are similar to the license issuance provision insomuch as they rely on standards that are "susceptible of objective measurement" and thus are consistent with the First Amendment. *See FW/PBS*, 837 F.2d at 1305–06. The factual bases necessary for suspension and revocation are either "implicitly obvious" or "ascertainable through reference to other sources of law." *FW/PBS*, 837 F.2d at 1306. Each of these provisions is a constitutional means of furthering the county's legitimate interests in enforcing the regulations of the order. The Court concludes that this aspect of the order is constitutional.

Procedural Safeguards

■■■■ In *Freedman v. Maryland*, 380 U.S. 51, 58, 85 S.Ct. 734, 739, 13 L.Ed.2d 649 (1965), the Supreme Court held that three procedural safeguards are necessary to ensure prompt decision making by a motion picture censorship board. These safeguards are: 1) any restraint prior to judicial review can be imposed only for a specified brief period during which the status quo must be maintained; 2) expeditious judicial review of that decisionmaker must be available; and 3) the censor must bear the burden of going to court to suppress the speech and must bear the burden of proof once in court. In *FW/PBS*, the Supreme Court struck down the Dallas ordinance because it failed to provide an effective time limitation on the licensing decision and because it failed to provide an avenue for prompt judicial review. *FW/PBS*, 493 U.S. at 226–29, 110 S.Ct. at 605–06. The Supreme Court in *FW/PBS* also held where a

---

**6.** The fact that three grounds for license denial involve the acts of an applicant's spouse does not affect the constitutionality of those provisions. *Dumas*, 648 F.Supp. at 1073 n. 33. Such provisions serve to prevent rejected applicants from

skirting the intent of the law by simply recruiting housemates. *Id. See also Lyng v. Castillo*, 477 U.S. 635, 106 S.Ct. 2727, 91 L.Ed.2d 527 (1986) (statutory classification based on living arrangements upheld).

city does not exercise discretion by passing judgment on the content of protected speech and where there is every incentive for the applicant to pursue an appeal of a license denial through court, the city need not bear the burden of going to court and the burden of proof once in court. *Id.* 493 U.S. at 229, 110 S.Ct. at 607.

██ Section 1A–5 provides that "the county director of public works shall approve the issuance of a license to an applicant within sixty (60) days after receipt of an application" unless he finds one of the listed conditions to be present.

Plaintiff contends that this is not a "reasonable time period during which the status quo is maintained." *FW/PBS*, 493 U.S. at 227, 110 S.Ct. at 606. Plaintiff relies on *Teitel Film Corp. v. Cusack*, 390 U.S. 139, 141, 88 S.Ct. 754, 756, 19 L.Ed.2d 966 (1968) (per curiam). In *Teitel*, the Supreme Court held that "the 50 to 57 days provided by the ordinance to complete the administrative process before initiation of the judicial proceedings does not satisfy the standard that the procedure must assure 'that the censor will within a specified brief period either issue a license or go to court to restrain showing the film.'" Defendant argues that it is improper to apply *Teitel*, a "content-based" decision, to a content-neutral regulation. *See City of Renton*, 475 U.S. at 47, 106 S.Ct. at 929. In fact, in *FW/PBS* the Supreme Court differentiated between a content-neutral regulation and a content-based regulation and declared that with respect to the third prong of the *Freedman* test, the city does not bear the burden of going to court to effect the denial of a license application or the burden of proof once in court. *FW/PBS*, 493 U.S. at 229, 110 S.Ct. at 607. The Court is not persuaded that the time for issuing the license in the Denton County order is governed by *Teitel*. What is required in a content-neutral regulation is that "the licensor must make the decision whether to issue the license within a specified and reasonable time period during which the status quo is maintained." *FW/ PBS*, 493 U.S. at 227, 110 S.Ct. at 606. Sixty days is not an unreasonable period of time in which to accumulate the necessary information to act on the license, to issue notices to those persons having a legitimate interest in the granting of the license and consider any objections that they may have to the granting of the license. This provision is not unconstitutional.

██ Plaintiff argues that the order is unconstitutional because it does not allow the applicant to exercise its First Amendment rights pending any application for a license. Plaintiff cites *FW/PBS* in support of this argument. The Court construes this argument to mean that the applicant should be allowed to operate a sexually oriented business while the application is pending. The Court does not believe that the holding in *FW/PBS* supports this argument. If Denton County was required to allow the operation of the sexually oriented business while the license was pending, there would be no necessity that the county be limited in the time required to act on the application.

██ Plaintiff also contends that the Denton County order is unconstitutional because Section 1A–11 fails to provide for a mandatory stay pending appeal after denial of a license. Section 1A–11 provides:

> If the county director of public works denies the issuance of a license, or suspends or revokes a license, he shall send to the applicant or licensee ... written notice of his action and the right to an appeal. The aggrieved party may appeal the decision of the county director of public works to a district court in this county on a trial de novo basis. Filing an appeal in a district court stays the county director of public works in *suspending* or *revoking* a license until the district court makes a final decision. All decisions of the county director of public works become final within thirty (30) days. (emphasis added)

Filing an appeal with the district court does not stay the county director's initial decision whether to issue the license. However, such a provision is not required. *FW/PBS* held that a license applicant has sufficient fiscal incentive to pursue the appeal of a license denial in court and therefore the municipality does not bear the burden of going to court. *FW/PBS*, 493 U.S. at 229, 110 S.Ct. at 607. Furthermore, if such a provision were re-

quired, the order adequately provides for prompt judicial review. Section 1A–11 provides that the decision of the County Public Works Director denying the issuance of a license is not final until thirty days after such denial, thus providing an applicant adequate time to seek judicial review of a denied application. Section 1A–11 is thus constitutional.

■ Plaintiff also claims that Section 1A–5 of the order violates its Fourteenth Amendment right to due process by failing to provide adequate procedural safeguards. The Court disagrees. The procedural safeguards as discussed above are adequate to meet Fourteenth Amendment requirements.

Restrictions on License Transfer

■ Section 1A–12 of the order forbids the transfer of a license to another or the use of a license to operate a sexually oriented business at a location other than that designated in the application. This provision is identical to the Dallas ordinance upheld in *Dumas. Dumas*, 648 F.Supp. at 1085. To allow either of these actions (transfer or use of a license) would provide a means whereby a person or location otherwise unqualified for licensing under the order could circumvent the order's prescriptions and limitations. The Court concludes that this aspect of the order is constitutional.

Exhibition of Sexually Explicit Films or Videos

■ The order's regulations pertaining to the exhibition of sexually explicit films or videos [Section 1A–19] is virtually identical to the Dallas provision upheld in *Dumas. Dumas*, 648 F.Supp. at 1076. The order imposes various internal restrictions on covered businesses. Its intrusions into the internal design of these businesses are designed to promote the county's legitimate interests in preventing illicit sexual activity and the spread of sexually transmitted diseases and similar provisions consistently have been upheld. *See also Wall Distributors, Inc. v. City of Newport News*, 782 F.2d 1165, 1167 n. 2 and 1169 (4th Cir.1986); *Ellwest Stereo Theatres, Inc. v. Wenner*, 681 F.2d 1243, 1246–47 (9th Cir.1982). The Court concludes that this aspect of the order is constitutional.

The Modeling Class Defense

■ Plaintiff contends that Section 1A–21(a)(3)(c) of the order is unconstitutional because it creates an impermissible classification. Defenses to prosecution pursuant to Section 1A–21 of the order for certain institutions are virtually identical to those upheld in *Dumas. Dumas*, 648 F.Supp. at 1089. Specifically, Sections 1A–21(a)(3)(B) and (C) create a defense for modeling classes operated by certain entities "where students have enrolled at least three days in advance of the class" and "where no more than one nude model is on the premises at any one time." A statutory classification will not be set aside if any stated facts reasonably may be conceived to justify it. *Pollard v. Cockrell*, 578 F.2d 1002, 1013 (5th Cir.1978) (*quoting McGowan v. Maryland*, 366 U.S. 420, 425–29, 81 S.Ct. 1101, 1105–06, 6 L.Ed.2d 393 (1961)). In such a situation as enunciated in this subsection, there is a greater likelihood that such nude modeling is a legitimate and artistic endeavor. The Court concludes that this aspect of the order is constitutional.

CONCLUSION

The order is facially constitutional, with the exception of Sections 1A–4(a)(4) and (5) and 1A–4(k) and portions of 1A–4(a)(2) and (3), which are severable.

Plaintiff shall submit a brief of legal authorities to the Court on or before fifteen (15) days from the date of the signing of this Order supporting plaintiff's request for attorney's fees. Defendant shall submit a reply brief within fifteen (15) days after plaintiff's brief is submitted.

IT IS SO ORDERED.