USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 93-1595 MATTHEW SABETTI, Petitioner, Appellant, v. PAUL DIPAOLO, Respondent, Appellee. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. A. David Mazzone, U.S. District Judge] ___________________ ____________________ Before Breyer, Chief Judge, ___________ Boudin and Stahl, Circuit Judges. ______________ ____________________ Carol A. Donovan with whom Committee for Public Counsel Services ________________ ______________________________________ was on brief for appellant. Nancy W. Geary, Assistant Attorney General, Criminal Bureau, with ______________ whom Scott Harshbarger, Attorney General, was on brief for appellee. _________________ ____________________ February 10, 1994 ____________________ BREYER, Chief Judge. State policemen found ____________ petitioner, Matthew Sabetti, and another person sitting in a parked car that contained drug paraphernalia strewn on the floor and, on the back seat, two small plastic bags of cocaine sticking out of a larger gym bag. It was later determined that the cocaine amounted to 38 grams of a very pure mixture. The Commonwealth charged Sabetti with violating a statute that, at the time, prohibited "knowingly _________ possessing with intent to distribute twenty-eight grams or more of cocaine." Mass. Gen. Laws Ann. ch. 94C, 32E(b) (West 1984) (ellipses omitted) (emphasis added) (statute reprinted in appendix). The trial judge instructed the jury that to convict Sabetti it must find, in effect, 1) that he knowingly possessed the two bags (with intent to distribute the cocaine) and 2) that he actually knew that the bags ___ ____ contained at least 28 grams of cocaine (i.e., an ounce). The jury found Sabetti guilty. The trial court, finding the evidence insufficient to show specific knowledge of 28 grams or more, set aside the verdict. But, the Supreme Judicial Court reinstated the verdict, on the ground that the statute does not require the government to prove the defendant's actual knowledge of amount -- though, we add, the facts here indicate that the amount was reasonably foreseeable. -2- 2 Sabetti now seeks federal habeas corpus. He argues that his conviction violates the "fair notice" requirement of the federal Constitution's Due Process Clause. See, e.g., United States v. Batchelder, 442 U.S. ___ ____ ______________ __________ 114, 123 (1979); United States v. Harriss, 347 U.S. 612, 617 _____________ _______ (1954); Lanzetta v. New Jersey, 306 U.S. 451, 453 (1939); ________ __________ Connally v. General Construction Co., 269 U.S. 385, 391 ________ _________________________ (1926); United States v. Colon-Ortiz, 866 F.2d 6, 8 (1st _____________ ___________ Cir.), cert. denied, 490 U.S. 1051 (1989). The federal _____ ______ district court rejected Sabetti's argument. And, so do we. As both sides agree, "[i]t is well-settled that due process requires that criminal statutes put individuals on sufficient notice as to whether their contemplated conduct is prohibited." See Colon-Ortiz, 866 F.2d at 8 ___ ___________ (citations omitted). As both sides also seem to agree, a criminal statute fails to provide fair notice if a "person _____ of ordinary intelligence," Harriss, 347 U.S. at 617, _______ "examining [only] the language of the statute," Colon-Ortiz, ___________ 866 F.2d at 9, would be in some way surprised that it prohibited the conduct in question. "It is not enough," we have explained, for the true meaning of the statute "to be apparent elsewhere," in extra-textual materials such as _________ legislative history or analogous statutes. Id. (emphasis __ -3- 3 added). The idea is that ordinary individuals trying to conform their conduct to law should be able to do so by reading the face of a statute -- not by having to appeal to ____ outside legal materials. At the same time, the person of ordinary intelligence is also a person of common sense, with knowledge of "common understanding[s] and practices," Jordan ______ v. De George, 341 U.S. 223, 232 (1951) (citation omitted), _________ which he brings fully to bear in "examining the language of the statute." In this case, we do not think the person of ordinary intelligence would be the least bit surprised to learn that the pertinent statutory language -- "knowingly possessing with intent to distribute twenty-eight grams or more of cocaine" -- was construed to prohibit the conduct for which Sabetti was convicted: knowingly possessing with intent to distribute an amount of cocaine that one might reasonably foresee would amount to at least 28 grams but which the defendant did not actually know weighed that much. ________ We acknowledge that, if one reads the statute in a vacuum, ___________ one might think the word "knowingly" could as easily be construed to apply to the words "twenty-eight grams" as not. But, bringing common sense to bear, we have little doubt the average person would be skeptical of the idea of a -4- 4 legislature really insisting that a prosecutor prove actual knowledge of a precise amount -- often an impossible task -- rather than knowledge simply of a small amount (e.g., two plastic bags' worth) that could easily turn out to weigh, say, an ounce. After all, most people know that the degree of harm drugs cause in the world is related, not to perceived amounts of drugs, but to actual amounts. _________ ______ Our conclusion is supported by the fact that we have searched the case law and have not found cases in which a garden-variety, textual ambiguity of the kind at issue here has risen to the level of a due process violation. See, e.g., Stout v. Dallman, 492 F.2d 992 (6th Cir. 1974) ___ ____ _____ _______ (finding, on habeas review, no "fair notice" violation when state court construed armed robbery statute requiring defendant to be "armed with a pistol, knife, or other _________ dangerous weapon" to cover defendant who smacked his victim _________________ on the head with an unidentified hard object) (emphasis added). Nor is this surprising. Legislators need not, and often cannot, draft statutes with perfect precision. See ___ Stansberry v. Holmes, 613 F.2d 1285, 1289 (5th Cir.) ("A __________ ______ provision need not . . . be cast in terms that are mathematically precise . . . .") (citations omitted), cert. _____ -5- 5 denied, 449 U.S. 886 (1980). If run-of-the-mill statutory ______ ambiguities were enough to violate the Constitution, no ____ court could ever clarify statutes through judicial interpretation, for the first person against whom the clarified version applied (and likely others as well) could argue that he was unfairly surprised and thus his due process rights were violated. Courts, of course, clarify textual ambiguities all the time. We have found cases, to be sure, in which courts ____ seem wary of run-of-the-mill statutory ambiguities, but these cases tend to involve statutes that criminalize conduct that the average person generally considers innocent. See, e.g., Kolender v. Lawson, 461 U.S. 352 ________ ___ ____ ________ ______ (1983) (statute restricting persons from wandering the streets without identification); United States v. Anzalone, ______________ ________ 766 F.2d 676 (1st Cir. 1985) (statute requiring reporting of currency transactions over $10,000). Of course, even a small degree of ambiguity, when construed to prohibit what would otherwise reasonably seem to be innocent conduct, can cause significant surprise. The instant case is quite different: no one thinks that cocaine drug dealing, even in small amounts, is innocent conduct. -6- 6 We have also found some cases indicating a "fair notice" violation in a statute that criminalizes (or sets penalties for) obviously non-innocent conduct such as drug ___ dealing. But, these cases tend to involve ambiguities that cannot easily be called run-of-the-mill. In United States _____________ v. Colon-Ortiz, 866 F.2d 6 (1st Cir.), cert. denied, 490 ___________ _____ ______ U.S. 1051 (1989), for example, we faced a (federal) drug statute that said that violators "shall be sentenced to a [minimum five-year] term of imprisonment, a [limited] fine, or both." 21 U.S.C. 841(b)(1)(B) (ellipses omitted) ________ (emphasis added) (since amended). The court interpreted the provision to mean that the only discretionary part of the sentence was the imposition of a fine; the imposition of a minimum five-year prison term was not discretionary. In doing so, however, the court recognized that such an interpretation flies directly in the face of the ordinary person's reading of the phrase "or both" and could only be justified by regarding "or both" as an "inadvertent drafting error" that should be "stricken from the statute." Colon- ______ Ortiz, 866 F.2d at 10. Again, our case is quite different: _____ as suggested above, the ambiguity at issue here -- whether a word near the beginning of a sentence ("knowingly") modifies -7- 7 a phrase near the end ("twenty-eight grams") -- was entirely ordinary. Finally, petitioner argues in his habeas petition that the "rule of lenity" (i.e., the rule saying that ambiguous criminal statutes should be construed favorably to defendants) requires a judgment in his favor. That rule, however, is one of statutory interpretation. We have no power to apply it to a state statute, for the Supreme Judicial Court, not this court, is the authoritative interpreter of state statutes. And, Sabetti has not pointed to anything in the federal Constitution -- other than, of course, the "fair notice" guaranty, which, we have just held, is satisfied here -- that would require a state court _______ to apply the rule of lenity when interpreting a state statute. For the reasons stated, the judgment of the district court is Affirmed. ________ NOTE: See Slip Opinion for Appendix. -8- 8