**TK'S VIDEO, INC., Plaintiff–Appellant,**

v.

**DENTON COUNTY, TEXAS,**
**Defendant–Appellee.**

**TK'S VIDEO, INC., Plaintiff–Appellee,**

v.

**DENTON COUNTY, TEXAS,**
**Defendant–Appellant.**

Nos. 93–4631, 93–5234.

United States Court of Appeals,
Fifth Circuit.

June 20, 1994.

Opinion Denying Rehearing July 26, 1994.

Brad Reich, Arthur M. Schwartz, Michael W. Gross, Denver, CO, for appellant in No. 93–4631.

Terrence S. Welch, Jimmy Edward Crouch, William C. Arnold, Pamela A. Wells, Denton County Crim. Dist. Atty., Dallas, TX, for appellee in No. 93–4631.

Terrence S. Welch, William C. Arnold, Vial, Hamilton, Koch & Knox, Dallas, TX, for appellant in No. 93–5234.

Brad Reich, Arthur M. Schwartz, Michael W. Gross, Denver, CO, Malcolm Dade, Dallas, TX, for appellee in No. 93–5234.

Before GOLDBERG, HIGGINBOTHAM, and EMILIO M. GARZA, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

TK's Video, Inc., an adult book and video store, sued Denton County, Texas, contending its licensing requirements for "adult" businesses violate the First and Fourteenth Amendments.[1] The district court held several licensing requirements unconstitutional, severed them, upheld the others, and awarded attorney's fees, 830 F.Supp. 335. Both TK's and Denton County appealed. We reject contentions that the County's licensing scheme was impermissibly broad and failed to provide adequate procedural protection, including judicial review. We affirm except in one particular. We find that the County

regulation fails to assure maintenance of the status quo while processing an application for a license by a business existing when the County adopted its regulation.

## I.

Erotic nonobscene printed matter, films, and live entertainment are sheltered by the First Amendment, *Mitchell v. Commission on Adult Entertainment Establishments*, 10 F.3d 123, 130 (3rd Cir.1993), but enjoy less protection than some other forms of speech such as political speech. *Young v. American Mini Theatres, Inc.*, 427 U.S. 50, 70, 96 S.Ct. 2440, 2452, 49 L.Ed.2d 310 (1976). There is no contention that TK's sells obscene pornographic material. Rather, TK's is regulated as an adult book and video store.

We distinguish between regulating the content and regulating the consequence of protected activity. *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 46–48, 106 S.Ct. 925, 928–29, 89 L.Ed.2d 29 (1986). A content-neutral time, place, or manner restriction must (1) be justified without reference to the content of the regulated speech; (2) be narrowly tailored to serve a significant or substantial governmental interest; and (3) preserve ample alternative means of communication. *Id.*

Under the first *City of Renton* factor, the Denton County order must justify its restrictions by reference to effects attending the regulated speech. The order, by its own terms, combats pernicious side effects of adult businesses such as prostitution, disease, street crime, and urban blight. It does not censor, prevent entrepreneurs from marketing, or impede customers from obtaining communicative material. The County's regulation does not on its face regulate content. Rather, the regulation is aimed at the impact on the surrounding community. But there are also procedural limits to regulating even at this lesser level of protection.

In *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990), Justice O'Connor, writing for Justices Stevens and Kennedy, and joined in the judgment by Justices Brennan, Marshall, and Blackmun, stated that content-neutral regulations contain adequate procedural safeguards when (1) any prior restraint before judicial review of the licensing process is for

---

**1.** This Order of Denton County is attached as Appendix A.

a specified brief period during which the status quo is maintained; and (2) there is prompt judicial review after denial of a license.

## II.

■ TK's first charges that the Denton County order, which provides that a county official shall issue an operating license within 60 days after receiving the application unless he discovers one of several disqualifying facts, fails to provide adequate procedural safeguards.[2] TK's argues that the county must have a deadline shorter than 60 days and that it must not interfere with normal business operation during the application process.

Under *FW/PBS*, the County must ensure that any restraint before judicial review is limited to a specified brief period. In *Teitel Film Corp. v. Cusack,* 390 U.S. 139, 141, 88 S.Ct. 754, 755–56, 19 L.Ed.2d 966 (1967) (per curiam), the Supreme Court found that 50 to 57 days is not a specified brief period. It is true that Denton County's order placed a 60–day limit on licensing procedures after receipt of an application. But the regulation in *Teitel* was content-based. The ordinance in *Teitel* also required administrators to review films before they could be shown, a relatively easy task compared to licensing adult businesses and the people who run them. Licensing entails reviewing applications, performing background checks, making identification cards, and policing design, layout, and zoning arrangements. We are persuaded that Denton County's order creates less of a danger to free speech and requires a more time-consuming inquiry than screening movies. We conclude that here 60 days for acting on license applications imposes no undue burden.

■ TK's also urges that the regulation is invalid for a related reason. It urges that Denton County fails to assure maintenance of the status quo. The contention is that the County cannot constitutionally shut down an existing business while its application for a license is pending and that TK's was operating when Denton County adopted its regula-

tion. The County points out that it has not attempted to close TK's; that because its regulation is content-neutral, it is not obligated to refrain from regulation during the licensing period. The district court rejected TK's contention concluding that interim regulation is implicit in a valid period for issuing a license. This is true as far as it goes, but it is qualified by the further limit that the County must maintain the status quo. We agree that an applicant for a license not in business when the Order was adopted is not free to operate while its license is pending.

Maintaining the status quo means in our view that the County cannot regulate an existing business during the licensing process. It is no answer that the County has not elected to do so. The absence of constraint internal to the regulation is no more than open ended licensing. Businesses engaged in activity protected by the First Amendment are entitled to more than the grace of the State.

The regulating order does not address the problem. The order maintains the status quo pending judicial review for licensees facing suspension or revocation. An applicant denied a license has a right to de novo review by the state district court and, by the terms of the Order, filing an appeal stays a Decision of the Director of Public Works in suspending or revoking a license until final decision by the state district court. Because TK's was in business when the Order was adopted, its free speech activity cannot be suppressed pending review of its license application by the County.

■ TK's also contends that the Order is deficient in failing to provide an automatic stay pending appeal of an administrative decision denying an application for a license. This argument is in essence a twin of the contention that the status quo must be maintained. We have concluded that the County cannot alter the status quo during the licensing process. There is then nothing to stay except a denial of a license. Stated another way, the issue is whether a business must be

---

2. The Order provides that "[a]ll decisions of the county director of public works become final within thirty (30) days." No one contends that this provision prevents an immediate appeal of a denial of license to the district court of Denton County. We read this language as setting a time within which an appeal must be lodged.

allowed to commence operation without a license during judicial review. Here we agree with the district court that a valid time period within which the County can act carries the implicit rejection of such required interim licensing. Nor is this unduly restrictive, given the availability of expeditious judicial review. A rejected license applicant has thirty days to seek judicial relief before the order of the Director of Public Works becomes final. *National Socialist Party v. Village of Skokie,* 432 U.S. 43, 44, 97 S.Ct. 2205, 2206, 53 L.Ed.2d 96 (1977).

This does not answer the further question of how much of the total licensing process must be complete within the specified brief period, specifically whether the brief period includes completion of judicial review. Despite contrary suggestions in Justice Brennan's opinion in *FW/PBS, Inc.* and some uncertainty in the language of Justice O'Connor's opinion in the same case, we read the Supreme Court to insist that the state must offer a fair opportunity to complete the administrative process and access the courts within a brief period. A "brief period" within which all judicial avenues are exhausted would be an oxymoron.

TK's objects that the order does not provide automatic and prompt judicial review, or an automatic stay of an order denying a license. As we explained, the Order provides that filing a notice of appeal to the state district court of Denton County stays an administrative decision revoking or suspending a license. So the focus of TK's contention is on the absence of a stay of an order denying a license. *FW/PBS* requires only a prompt judicial hearing, a standard that the order meets by giving an unsuccessful license applicant 30 days to appeal to a district court in Denton County "on a trial de novo basis." The availability of expeditious judicial review obviates the need for an automatic stay. *National Socialist Party v. Village of Skokie,* 432 U.S. 43, 44, 97 S.Ct. 2205, 2206, 53 L.Ed.2d 96 (1977).

### III.

### A.

■ TK's urges that the County's list of persons associated with its business who must be licensed is impermissibly broad. Denton County required a license from numerous persons associated with adult businesses. The district court, however, struck down licensing requirements for stockholders, limited partners, equity holders and their employees, and property owners and equity holders associated with adult businesses from the regulation. This exclusion is not at issue and the regulation now extends only to owners, clerks, and employees of adult businesses, corporations or directors of adult businesses and their employees, and partners in adult businesses and their employees.

Under the licensing provision the County Director of Public Works must approve a license unless he finds an enumerated disqualifying factor such as a prior adult business regulatory violation or a conviction for a certain sexual offense.

Licensing clerks and employees ensures that only persons who satisfy basic legal and hygienic standards work in adult businesses. The County also requires that all adult business employees wear an identification card at work. The County says that this requirement permits it to monitor the work force of adult businesses and to ensure that only duly authorized adults work in these enterprises.

While corporations reasonably may be obliged to submit detailed business information to obtain a license, the requirement that owners and employees disclose personal information to County officials is more burdensome. The Denton County order requires owners and employees to disclose only their age, recent infractions of certain adult business regulations, and recent convictions for certain sexual offenses. The County says that their information assists in making background checks and preparing identification cards.

Compelled content-neutral disclosure of owner and employee information can chill protected expression. *See Talley v. California,* 362 U.S. 60, 64, 80 S.Ct. 536, 538–39, 4 L.Ed.2d 559 (1960); *NAACP v. Alabama ex rel. Patterson,* 357 U.S. 449, 461–62, 78 S.Ct. 1163, 1171–72, 2 L.Ed.2d 1488 (1958). This chill could occur even if suppressing particular expression is unintended. *NAACP,* 357 U.S. at 461, 78 S.Ct. at 1171. We insist that

countervailing state interests must further a substantial government interest. *Buckley v. Valeo,* 424 U.S. 1, 64, 96 S.Ct. 612, 656, 46 L.Ed.2d 659 (1975) (per curiam). This protective skirt requires a "relevant correlation" or "substantial relation" between the information required and the government interest. *Id.*

We are persuaded that requiring owners and employees to supply information about their age and certain prior regulatory infractions and sexual offenses substantially relates to the substantial government interest of curtailing pernicious side effects of adult businesses. The Denton County order does not demand comprehensive disclosure of personal information, but only information reflecting ability to function responsibly in the adult business setting.

The Seventh and Ninth Circuits have invalidated disclosure requirements. In *Genusa v. City of Peoria,* 619 F.2d 1203 (7th Cir.1980), the court invalidated the required disclosure of past aliases, criminal convictions, and ordinance violations as unrelated to the city's stated goal of preventing adult businesses from congregating in one location. *Id.* at 1215–19.

In *Acorn Investments, Inc. v. City of Seattle,* 887 F.2d 219, 224–26 (9th Cir.1989), the court invalidated a shareholder disclosure rule. The city wanted to use the information to notify shareholders of ordinance requirements and to hold them legally responsible for violations, although officers and directors, not shareholders, have legal responsibility for businesses. The court found no logical connection between the shareholder disclosure rule and the stated purpose for the information. *Id.* at 226.

*Genusa* and *Acorn* are not apposite. The Denton County order outlines the ambitious agenda of curtailing negative side effects not simply of clusters of adult businesses, but of each adult business. Disclosure of owner and employee personal history might not be tailored to locating adult businesses, but it does monitor persons with a history of regulatory violations or sexual misconduct who would manage or work in them. These histories are plainly correlated with the side effects that can attend these businesses, the regulation of which was the legislative objective. In more legalistic and abstract terms, ends and means are substantially related. Insisting on this fit of ends and means both assures a level of scrutiny appropriate to the protected character of the activities and sluices regulation away from content, training it on business offal.

### B.

An applicant requesting a license must post a sign on the business premises disclosing his request. An applicant must also disclose his request by advertising in local newspapers. The district court upheld these disclosure requirements, while striking down a requirement requiring applicants to notify property owners within a specified radius of the proposed enterprise. The two notice provisions that survived challenge in the district court ensure that potential neighbors know about the impending arrival of adult businesses. Notice to others of pending zoning regulation is supported by a substantial state interest, serving the practical role of allowing effected persons an opportunity to examine the request and test its accuracy. These notice requirements are not onerous. Nor are they disguised censorship. Rather, they are typical of notices routinely required in zoning regulations. We are persuaded that the notice requirements are sufficiently tailored to the regulatory objective.

### C.

Government cannot tax First Amendment rights, but it can exact narrowly tailored fees to defray administrative cost of regulation. *Cox v. New Hampshire,* 312 U.S. 569, 576–77, 61 S.Ct. 762, 765–66, 85 L.Ed. 1049 (1941). Denton County requires each business and individual requesting a license to pay annual fees of $500 and $50, respectively. The district court found these amounts tied to the cost of investigating applicants and processing licenses. We agree.

### D.

We have upheld design and layout regulations for adult film and video theaters. *See FW/PBS, Inc. v. City of Dallas,* 837 F.2d 1298, 1304 (5th Cir.1988), *aff'd in part, rev'd in part, vacated in part,* 493 U.S. 215, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990). The Den-

ton County order contains specifications identical to those previously upheld. Completely private and poorly lit viewing booths encourage illegal and unsanitary sexual activity in adult theatres. *See FW/PBS,* 837 F.2d at 1304. The design and layout regulations narrowly respond to a substantial governmental interest.

### E.

■ The remaining requirements in the Denton County order for issuing, suspending, or revoking licenses resemble those in the *FW/PBS* ordinance, which survived constitutional challenge. *See id.* at 1305–06. These procedures, like those in *FW/PBS,* can be objectively measured and rest on adequate factual bases either obvious by their terms or ascertainable by reference to other sources of law. *See id.* at 1306.

### IV.

■ Denton County argues that the district court abused its discretion by finding that TK's was entitled to attorney's fees. *See United States v. Mississippi,* 921 F.2d 604, 609 (5th Cir.1991). To receive attorney's fees, a plaintiff must be a prevailing party, that is, the plaintiff must succeed on a significant issue that achieves some of the benefit the plaintiff sought in bringing suit. *Farrar v. Hobby,* —— U.S. ——, ——, 113 S.Ct. 566, 572, 121 L.Ed.2d 494 (1992). A prevailing party must effect change in the legal relationship between plaintiff and defendant. *Id.* at ——, 113 S.Ct. at 572–73.

TK's has succeeded on significant issues and has altered its legal relationship to the County. The district court invalidated licensure requirements for stockholders, limited partners, equity holders, and property owners associated with adult businesses. As well, the court invalidated the notice requirement in regard to property owners in close proximity to proposed adult businesses. We have, in turn, insisted on a status quo provision. These holdings materially alter the relationship of TK's to the county.

■ Denton County urges that TK's has not applied for a license, so the invalidation of any part of the order has not altered any legal relationship. This ignores the reality that TK's must apply for a license to continue operation. After the trial court's and this court's judgment, however, TK's must meet fewer requirements. TK's lawsuit has altered the relevant legal regime.

In *Rhodes v. Stewart,* 488 U.S. 1, 109 S.Ct. 202, 102 L.Ed.2d 1 (1988) (per curiam), the Court reversed an attorney's fees award after a successful lawsuit to modify prison policies because one plaintiff had died and the other had been released. It found that a victory "could not have in any way benefited either plaintiff." *Id.* at 4, 109 S.Ct. at 203–04. Similarly, in *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.,* 489 U.S. 782, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989), the Court invalidated as vague a school regulation requiring that meetings during nonschool hours be conducted only with prior approval of the principal. The court suggested that this finding alone would not support prevailing party status without "evidence that the plaintiffs were ever refused permission to use school premises during nonschool hours." *Id.* at 792, 109 S.Ct. at 1493–94.

In *Rhodes,* the plaintiffs stood little chance of benefiting from the changed policy. They would do so only if they returned to prison. That chance was too speculative for the surviving plaintiff and nonexistent for the dead one. As a result, the lawsuit did not materially alter the legal relationship between the parties. A similar rationale explains *Texas State Teachers,* in which the plaintiffs failed to show that the principal had ever withheld permission for a meeting. As the plaintiffs may have been free to meet regardless of their suit, it was uncertain whether success on the merits would alter any legal relationship.

In contrast to the plaintiffs in *Rhodes* and *Texas State Teachers,* TK's faces certain regulation. First, TK's must seek a license to continue operation. The original order, partially invalidated by the district court, would have required TK's to seek licensure of stockholders, limited partners, equity holders, and certain property owners, and to notify certain neighbors at its business location. Unlike the plaintiffs in *Rhodes,* TK's would have been subject to these unconstitutional requirements with virtual certainty.

Second, the requirements that TK's seek licenses for certain persons and notify certain neighbors were not vague or optional, but

were prerequisites for operation. These invalidated regulations did not resemble the school rule in *Texas State Teachers* because, unlike the principal's unstructured decision-making process, they were neither indefinite by their terms nor discretionary in their application. TK's must meet these requirements to remain open.

Denton County cites *LaGrange Trading Co. v. Broussard*, No. 90–2306, 1993 WL 188672, 1993 U.S.Dist. LEXIS 7281 (E.D.La. May 25, 1993), in which an adult bookstore challenged a zoning ordinance to remain at its present location. The court upheld most of the ordinance, but invalidated a special permit requirement. From this partial victory, the plaintiff sought attorney's fees. The court denied the request because the remaining provisions would require the business to move anyway. *Id.*, 1993 WL 188672 at *4–5, 1993 U.S.Dist. LEXIS 7281 at *16. Unlike the plaintiff in that case, TK's benefits from its lawsuit.

■■■ The district court entertained a request by Michael Gross for $22,487.50 in attorney's fees, but reduced the actual award to $7,500. Denton County argues that the $7,500 is unreasonably high given the degree of TK's success. In particular, the County notes that TK's asserted 72 constitutional challenges to the order, but prevailed on only 5 of them, a 7% success rate, which might suggest that $7,500 of the $22,487.50, or 33% of the requested fees, is too generous. TK's counsel was able and the County's counting fails to capture the success of this suit. We do not think so, but even if the award is generous, it is not an abuse of discretion.

We affirm the district court's carefully crafted decree in virtually all respects. We remand to the district court with instruction to enter judgment with the additional declaration that until the order of the Director of Public Works becomes final, an applicant for a license in business on the effective date of the Order cannot otherwise be regulated by the Order.

AFFIRMED in part, VACATED and REMANDED in part.

## APPENDIX A

### STATE OF TEXAS

### COMMISSIONER'S COURT FOR DENTON COUNTY

### SEXUALLY ORIENTED BUSINESSES ORDER

AN ORDER PROVIDING FOR LICENSING AND REGULATION OF SEXUALLY ORIENTED BUSINESSES IN UNINCORPORATED AREAS OF DENTON COUNTY, TEXAS.

WHEREAS, there are sexually oriented businesses in the unincorporated area of Denton County and there is the potential for future businesses that require special supervision from the public safety agencies of the county in order to protect and preserve the health, safety, and welfare of the patrons of such businesses as well as the citizens of the County; and

WHEREAS, the Commissioner's Court finds that sexually oriented businesses are frequently used for unlawful sexual activities, including prostitution and sexual liaisons of a casual nature; and

WHEREAS, the concern over sexually transmitted diseases is a legitimate health concern of the County which demands reasonable regulation of sexually oriented businesses in order to protect the health and well-being of the citizens; and

WHEREAS, licensing is a legitimate and reasonable means of accountability to ensure that operators of sexually oriented businesses comply with reasonable regulations and to ensure that operators do not knowingly allow their establishments to be used as places of illegal sexual activity or solicitation; and

WHEREAS, there is convincing documented evidence that sexually oriented businesses, because of their very nature have a deleterious effect on both the existing businesses around them and the surrounding residential areas adjacent to them, causing increased crime and the downgrading of property values, and

WHEREAS, it is recognized that sexually oriented businesses, due to their nature, have serious objectionable operational characteristics, particularly when they are located in close proximity to each other, thereby contributing to urban and rural blight and downgrading the quality of life in the adjacent area; and

WHEREAS, the Commissioner's Court desires to minimize and control these adverse effects and thereby protect the health, safety, and welfare of the citizenry; protect the citizens from increased crime; preserve the quality of life; preserve the property values and character of surrounding neighborhoods and deter the spread of urban and rural blight; and

WHEREAS, it is not the intent of this order to suppress any speech activities protected by the First Amendment, but to enact a content-neutral ordinance which addresses the secondary effects of sexually oriented businesses; and

WHEREAS, it is not the intent of the Commissioner's Court to condone or legitimize the promotion of obscene material, and the Commissioner's Court recognizes that state law prohibits the promotion of obscene materials, and expects and encourages state enforcement officials to enforce state obscenity statutes against any such illegal activities in Denton County.

Pursuant to the authority granted by the Constitution and 243.001 et seq. Local Government Code of the State of Texas, BE IT ENACTED BY THE COMMISSIONER'S COURT OF DENTON COUNTY, TEXAS:

## SEXUALLY ORIENTED BUSINESSES ORDER

### INDEX TO ORDER

| Section | Title | Page |
|---|---|---|
| 1A–1 | Purpose and Intent | 714 |
| 1A–2 | Definitions | 714 |
| 1A–3 | Classification | 716 |
| 1A–4 | License Required | 716 |
| 1A–5 | Issuance of License | 718 |
| 1A–6 | Fees | 719 |
| 1A–7 | Inspection | 719 |
| 1A–8 | Expiration of License | 719 |
| 1A–9 | Suspension | 720 |
| 1A–10 | Revocation | 720 |
| 1A–11 | Appeal | 720 |
| 1A–12 | Transfer of License | 721 |
| 1A–13 | Location of Sexually Oriented Business | 721 |
| 1A–14 | Exemption from Location Restrictions | 722 |
| 1A–15 | Additional Regulations for Escort Agencies | 722 |
| 1A–16 | Additional Regulations for Nude Model Studios | 722 |
| 1A–17 | Additional Regulations for Adult Theaters and Adult Motion Picture Theaters | 723 |
| 1A–18 | Additional Regulations for Adult Motels | 723 |
| 1A–19 | Regulations Pertaining to Exhibition of Sexually Explicit Films or Videos | 723 |
| 1A–20 | Display of Sexually Explicit Material to Minors | 724 |
| 1A–21 | Defenses | 724 |
| 1A–22 | Enforcement | 725 |
| 1A–23 | Severability | 725 |
| 1B–1 | Time of Effect | 725 |

### ORDER OF THE COMMISSIONERS COURT

**SEC. 1A–1.** *PURPOSE AND INTENT.*

(a) It is the purpose of this order to regulate sexually oriented businesses to promote the health, safety, morals, and general welfare of the citizens of the county, and to establish reasonable and uniform regulations to prevent the concentration of sexually oriented businesses within the county. The provisions of this order have neither the purpose nor effect of imposing a limitation or restriction on the content of any communicative materials, including sexually oriented materials. Similarly, it is not the intent nor effect of this order to restrict or deny access

by adults to sexually oriented materials protected by the First Amendment, or to deny access by the distributors and exhibitors of sexually oriented entertainment to their intended market. The promotion of obscene material (not protected by the first Amendment) is enforceable through separate criminal sanctions under the penal code.

(b) It is the intent of the Commissioners Court that the locational regulations of this are promulgated pursuant to 243.001 *et. seq.* Local Government Code, as they apply to sexually oriented business.

SEC. 1A–2. *DEFINITIONS.*

In this order:

(1) ADULT ARCADE means any place to which the public is permitted or invited wherein coin-operated or slug operated or electronically, or mechanically controlled still or motion picture machines, projectors, or other image-producing devices are maintained to show images to five or fewer persons per machine at any one time, and where the images so displayed are distinguished or characterized by the depicting or describing of "specified sexual activities" or "specified anatomical areas,"

(2) ADULT BOOKSTORE or ADULT VIDEO STORE means a commercial establishment which as one of its principal business purposes offers for sale or rental for any form of consideration any one or more of the following:

(A) books, magazines, periodicals or other printed matter, or photographs, films, motion pictures, video cassettes or video reproductions, slides, or other visual representations which depict or describe "specified sexual activities" or "specified anatomical areas"; or

(B) instruments, devices, or paraphernalia which are designed for use in connection with "specified sexual activities."

(3) ADULT CABARET means a nightclub, bar, restaurant, or similar commercial establishment which regularly features:

(A) persons who appear in a state of nudity; or

(B) live performances which are characterized by the exposure of "specified anatomi-

cal areas" or by "specified sexual activities"; or

(C) films, motion pictures, video cassettes, slides, or other photographic reproductions which are characterized by the depiction or description of "specified sexual activities" or "specified anatomical areas."

(4) ADULT MOTEL means a hotel, motel or similar commercial establishment which:

(A) offers accommodations to the public for any form of consideration; provides patrons with closed-circuit television transmissions, film, motion pictures, video cassettes, slides, or other photographic reproductions which are characterized by the depiction or description of "specified sexual activities" or "specified anatomical areas"; and has a sign visible from the public right of way which advertises the availability of this adult type of photographic reproductions; or

(B) offers a sleeping room for rent for a period of time that is less than 10 hours; or

(C) allows a tenant or occupant of a sleeping room to subrent the room for a period of time that is less than 10 hours.

(5) ADULT MOTION PICTURE THEATER means a commercial establishment where for any form of consideration, films, motion pictures, video cassettes, slides or similar photographic reproductions are regularly shown and are characterized by the depiction or description of "specified sexual activities" or "specified anatomical areas."

(6) ADULT THEATER means a theater, concert hall, auditorium, or similar commercial establishment which regularly features persons who appear in a state of nudity or live performances which are characterized by the exposure of "specified anatomical areas" or by "specified sexual activities."

(7) APPLICANT means a person who must apply for a license by this act.

(8) CHILD CARE FACILITY means a building used as a day nursery, children's boarding home, child placing agency or other place for the care or custody of children under fifteen years of age.

(9) CHURCH or PLACE OF RELIGIOUS WORSHIP means a building in which persons regularly assemble for wor-

ship, intended primarily for purposes connected with faith, or for propagating a particular form of belief.

(10) COUNTY DIRECTOR OF PUBLIC WORKS means the Denton County director of public works or his designated agent.

(11) ESCORT means a person who, for consideration, agrees or offers to act as a companion, guide, or date for another person, or who agrees or offers to privately model lingerie or to privately perform a striptease for another person.

(12) ESCORT AGENCY means a business association who furnishes, offers to furnish, or advertises to furnish escorts as one of its primary business purposes, for a fee, tip, or other consideration.

(13) ESTABLISHMENT means and includes any of the following:

(A) the opening or commencement of any sexually oriented business as a new business;

(B) the conversion of an existing business, whether or not a sexually oriented business, to any sexually oriented business;

(C) the addition of any sexually oriented business to any other existing sexually oriented business;

(D) the relocation of any sexually oriented business; or

(E) a location and place of business.

(14) LICENSEE means a person in whose name a license to operate a sexually oriented business has been issued, as well as the individual listed as an applicant on the application for a license on a person licensed under this act.

(15) NUDE MODEL STUDIO means any place where a person who appears in a state of nudity or displays "specified anatomical areas" is provided to be observed, sketched, drawn, painted, sculptured, photographed, or similarly depicted by other persons who pay money or any form of consideration.

(16) NUDITY or a STATE OF NUDITY means:

(A) the appearance of a human bare buttock, anus, male genitals, female genitals, pubic region or female breasts; or

(B) a state of dress which fails to opaquely cover a human buttock, anus, male genitals, female genitals, pubic region or areola of the female breast.

(17) PERSON means an individual, proprietorship, partnership, corporation, association, or other legal entity.

(18) PUBLIC PARK means a tract of land maintained by the federal, state, or a local government for the recreation and enjoyment of the general public.

(19) RESIDENTIAL DISTRICT means a single family, duplex, townhouse, multiple family or mobile home district.

(20) RESIDENTIAL USE means a single family, duplex, multiple family, or "mobile home park, mobile home subdivision, and campground" use as a residence.

(21) SEMI–NUDE means a state of dress in which clothing covers no more than the genitals, pubic region, and areola of the female breast, as well as portions of the body covered by supporting straps or devices.

(22) SEXUAL ENCOUNTER CENTER means a business or commercial enterprise that, as one of its primary business purposes, offers for any form of consideration:

(A) physical contact in the form of wrestling or tumbling between persons of the opposite sex; or

(B) activities between male and female persons and/or persons of the same sex when one or more of the persons is in a state of nudity or semi-nude.

(23) SEXUALLY ORIENTED BUSINESS means an adult arcade, adult bookstore or adult video store, adult cabaret, adult motel, adult motion picture theater, adult theater, escort agency, nude model studio, or sexual encounter center.

(24) SHERIFF means the Sheriff of Denton County or his designated agent.

(25) SPECIFIED ANATOMICAL AREAS means human genitals in a state of sexual arousal.

(26) SPECIFIED SEXUAL ACTIVITIES means and includes any of the following:

(A) the fondling or other erotic touching of human genitals, pubic region, buttocks, anus, or female breasts;

(B) sex acts, normal or perverted, actual or simulated, including intercourse, oral copulation, or sodomy;

(C) masturbation, actual or simulated; or

(D) excretory functions as part of or in connection with any of the activities set forth in (A) through (C) above.

(27) SUBSTANTIAL ENLARGEMENT of a sexually oriented business means the increase in floor area occupied by the business by more than 25 percent, as the floor area exists on February 5, 1990.

(28) TRANSFER OF OWNERSHIP OR CONTROL of a sexually oriented business means and includes any of the following:

(A) the sale, lease, or sublease of the business;

(B) the transfer of securities which constitute a controlling interest in the business, whether by sale, exchange, or similar means; or

(C) the establishment of a trust, gift, or other similar legal device which transfers the ownership or control of the business, except for transfer by bequest or other operation of the law upon the death of the person possessing the ownership or control.

### SEC. 1A–3. *CLASSIFICATION.*

Sexually oriented businesses are classified as follows:

(1) adult arcades;

(2) adult bookstores or adult video stores;

(3) adult cabarets;

(4) adult motels;

(5) adult motion picture theaters;

(6) adult theaters;

(7) escort agencies;

(8) nude model studios; and

(9) sexual encounter centers.

### SEC. 1A–4. *LICENSE REQUIRED AND DUTIES OF APPLICANT.*

(a) The following are required to be licensed:

(1) All owners, clerks, and employees of a sexually oriented business are required to be licensed to operate or work in said business.

(2) All corporations, stockholders or directors of any sexually oriented business and their employees.

(3) All partners and limited partners in any sexually oriented business and their employees.

(4) All equity holders of any sexually oriented business and their employees.

(5) All real property owners, stockholders, executive officers, corporations, partners, limited partners or equity holders and lien holders and their employees which are associated with any sexually oriented business requiring a license under this order.

(b) No person may work for any sexually oriented business without having on his or her person at all times while at work an appropriate identification card showing that he or she is currently licensed. Such identification shall be available at all times for inspection and shall be worn on the left breast of said employee during working periods.

(c) All potential employees and/or clerks of sexually oriented businesses must comply with Sec. 1A–4(a), (b), (g), (h), 1A–6(b), 1A–8, 1A–9, 1A–10, 1A–15, 1A–16, 1A–17, 1A–18, and not be in violation of Sec. 1A–5(a)(1), (3), (4), (6), (8), or (10) before being issued an identification card to work at the business. Application forms will be provided by the county director of public works and the determinations of compliance must be made by him within sixty (60) days from time of application.

(d) An application for a sexually oriented business license must be made on a form provided by the county director of public works. The application must be accompanied by a sketch or diagram showing the configuration of the premises, including a statement of total floor space occupied by the business. The sketch or diagram need not be professionally prepared but must be drawn to a designated scale or drawn with marked dimensions of the interior of the premises to an accuracy of plus or minus six inches. Applicants who must comply with Section 1A–19 of this order shall submit a diagram meeting the requirements of Section 1A–19. All locational requirements must be approved by the county director of public works within sixty (60) days from the time the application is filed.

(e) The applicant for a sexually oriented business license must be qualified according to the provision of this order.

(f) If a person who wishes to operate a sexually oriented business is an individual, he must sign the application for a license as applicant. If a person who wishes to operate a sexually oriented business is other than an individual, each individual who has an interest in the business must sign the application for a license as applicant and shall be considered a licensee if a license is granted.

(g) The fact that a person possesses any other valid license required by law does not exempt him from the requirement of obtaining a sexually oriented business license. A person who operates a sexually oriented business and possesses another business license shall comply with the requirements and provisions of this order as well as the requirements and provisions of the laws concerning the other license.

(h) Each applicant shall attach two copies of a recent photo to his or her application form.

(i) Each applicant for a business license shall, upon the filing of the application and payment of the filing fee, place signs (at least 24 inches × 36 inches in size) which provide notification and information specifically stating "SEXUALLY ORIENTED BUSINESS LICENSE APPLICATION PENDING" and the date on which the application was filed. All lettering on the signs must be at least 1 and ½ inches × 2 inches in size for each letter on the sign. The signs must be of sufficient quantities to be placed upon the property so as to identify it as being subject to a proposed sexually oriented license. It shall be the duty of each applicant as to each particular application to erect said signs along all the property's public road or highway frontage so as to be clearly visible from the public road or highway. If a property does not have a public road or highway frontage, then signs shall be placed upon the closest available right of way and upon the property. One sign shall be erected for each three hundred-foot increment of each public road or highway frontage on said property existing or any part thereof. Said signs shall be erected not less than fourteen (14) days after the filing of the application for the sexually oriented business license and remain erected until the application has been approved by the county director of public works.

(j) Every applicant for a sexually oriented business license shall give notice of the application by publication at his own expense in two consecutive issues of a newspaper of general circulation published in Denton County, Texas. The notice shall be printed in 10–point boldface type and shall include: (1) the fact that a sexually oriented business license has been applied for; (2) the exact location of the place of business for which the permit is sought; (3) the names of each owner of the business and, if the business is operated under an assumed name, the trade name together with the names of all owners; and (4) if the applicant is a corporation, the names and titles of all officers. Such notice shall be printed not less than fourteen (14) days after the application is filed with the public works department.

(k) Written notice of the application for a sexually oriented business license shall be sent to all owners of real property lying within one thousand (1000) feet of property on which the license is requested. Such notice shall be sent not less than fourteen (14) days after the application is filed with the county director of public works. The notice of the application for a sexually oriented business license described herein shall be given by posting such notice properly addressed and postage paid to each taxpayer as the ownership appears on the last approved county tax roll. Each property owner shall have fourteen (14) days from the mailing of the notice to advise the county director of public works of a locational restriction under Sec. 1A–13(a) or (b) of this order. It is the responsibility of the applicant for a license to send this notice.

(l) An applicant for a renewal permit or an existing business at the time of the passage of this order is not required to publish notice or meet the posting requirements of (i), (j) and (k) above.

SEC. 1A–5. *ISSUANCE OF LICENSE.*

(a) The county director of public works shall approve the issuance of a license to an applicant within sixty (60) days after receipt

of an application unless he finds one or more of the following to be true:

(1) An applicant is under 18 years of age.

(2) An applicant or an applicant's spouse is overdue in his payment to the county of taxes, fees, fines, or penalties assessed against him or imposed upon him in relation to a sexually oriented business. The county tax assessor shall make this determination and report his findings to the county director of public works within sixty (60) days from the time the application is filed.

(3) An applicant has failed to provide information reasonably necessary for issuance of the license or has falsely answered a question or request for information on the application form.

(4) An applicant or an applicant's spouse has been convicted of a violation of a provision of this order, other than the offense of operating a sexually oriented business without a license, within two years immediately preceding the application. The fact that a conviction is being appealed shall have no effect. The sheriff of Denton County shall make this determination and report his findings to the county director of public works within sixty (60) days from the time the application is filed.

(5) The premises to be used for the sexually oriented business have not been approved by the county director of public works as being in compliance with this order. Reports of compliance or non-compliance with this order must be completed by the county director of public works within sixty (60) days from the time the application is filed.

(6) The license fee required by this order has not been paid.

(7) An applicant has failed to comply with the requirements of Sec. 1A–4(i), (j) or (k) unless exempt under 1A–4(1).

(8) An applicant has been employed in a sexually oriented business in a managerial capacity within the preceding twelve (12) months and has demonstrated that he is unable to operate or manage a sexually oriented business premises in a peaceful and law-abiding manner, thus necessitating action by law enforcement officers.

(9) An applicant or the proposed establishment is in violation of or is not in compliance with Section 1A–7, 1A–12, 1A–13, 1A–15, 1A–16, 1A–17, 1A–18, 1A–19, or 1A–20.

(10) An applicant or an applicant's spouse has been convicted of a crime:

(A) involving:

(i) any of the following offenses as described in Chapter 43 of the Texas Penal code:

(aa) prostitution;

(bb) promotion of prostitution;

(cc) aggravated promotion of prostitution;

(dd) compelling prostitution;

(ee) obscenity;

(ff) sale, distribution, or display of harmful material to minor;

(gg) sexual performance by a child;

(hh) possession of child pornography;

(ii) any of the following offenses as described in Chapter 21 of the Texas Penal Code;

(aa) public lewdness;

(bb) indecent exposure;

(cc) indecency with a child;

(iii) sexual assault or aggravated sexual assault as described in Chapter 22 of the Texas Penal Code;

(iv) incest, solicitation of a child, or harboring a runaway child as described in Chapter 25 of the Texas Penal Code;

(v) criminal attempt, conspiracy, or solicitation to commit any of the foregoing offenses;

(B) for which:

(i) less than two years have elapsed since the date of conviction or the date of release from confinement imposed for the conviction, whichever is the later date, if the conviction is of a misdemeanor offense;

(ii) less than five years have elapsed since the date of conviction or the date of release from confinement for the conviction, whichever is the later date, if the conviction is of a felony offense; or

(iii) less than five years have elapsed since the date of the last conviction or the date of release from confinement for the last conviction, whichever is the later date, if the convictions are of two or more misdemeanor

offenses or combination of misdemeanor offenses occurring within any 24–month period.

(b) The fact that a conviction is being appealed shall have no effect on the disqualification of the applicant or applicant's spouse.

(c) An applicant who has been convicted or whose spouse has been convicted of an offense listed in Subsection (a)(10) may qualify for a sexually oriented business license only when the time period required by Section 1A–5(a)(10)(B) has elapsed.

(d) The license, if granted, shall state on its face the name of the person or persons to whom it is granted, the expiration date, and the address of the sexually oriented business. The license shall be posted in a conspicuous place at or near the entrance to the sexually oriented business so that it may be easily read at any time.

(e) It shall be the duty of the sheriff to report the findings under Section 1A–5(a)(10) and 1A–5(c) above to the county director of public works within sixty (60) days from the time the application is filed.

SEC. 1A–6.  *FEES.*

(a) The annual fee for a sexually oriented business license is $500.00.

(b) Each individual applicant shall pay a $50.00 fee with each application.

SEC. 1A–7.  *INSPECTION.*

(a) An applicant or licensee shall permit representatives of the sheriff's department and county public works department to inspect the premises of a sexually oriented business for the purpose of insuring compliance with the law, at any time it is occupied or open for business.

(b) A person who operates a sexually oriented business or his agent or employee commits an offense if he refuses to permit a lawful inspection of the premises by a representative of the sheriff's department at any time it is occupied or open for business.

(c) The provisions of this section do not apply to areas of an adult motel which are currently being rented by a customer for use as a permanent or temporary habitation.

SEC. 1A–8.  *EXPIRATION OF LICENSE.*

(a) Each license shall expire one year from the date of issuance and may be renewed only by making application as provided in Section 1A–4.  Application for renewal should be made at least 60 days before the expiration date, and when made less than 60 days before the expiration date, the expiration of the license will not be affected.

(b) When the county director of public works denies renewal of a license, the applicant shall not be issued a license for one year from the date of denial.  If, subsequent to denial, the county director of public works finds that the basis for denial of the renewal license has been corrected or abated, the applicant may be granted a license if at least 90 days have elapsed since the date denial became final.

SEC. 1A–9.  *SUSPENSION.*

The county director of public works shall suspend a license for a period not to exceed 30 days if he determines that a licensee has:

(1) violated or is not in compliance with any portion of this order;

(2) engaged in excessive use of alcoholic beverages while on the sexually oriented business premises;

(3) refused to allow an inspection of the sexual oriented business premises as authorized by this order;

(4) knowingly permitted gambling by any person on the sexual oriented business premises;

(5) demonstrated inability to operate or manage a sexually oriented business in a peaceful and law-abiding manner thus necessitating action by law enforcement officers.

SEC. 1A–10.  *REVOCATION.*

(a) The county director of public works shall revoke a license if a cause of suspension in Section 1A–9 occurs and the license has been suspended within the preceding 12 months.

(b) The county director of public works shall revoke a license if he determines that:

(1) a licensee gave false or misleading information in the material submitted to the county director of public works during the application process;

(2) a licensee or an employee has knowingly allowed possession, use, or sale of controlled substances on the premises;

(3) a licensee or an employee has knowingly allowed prostitution on the premises;

(4) a licensee or an employee knowingly operated the sexually oriented business during a period of time when the licensee's license was suspended;

(5) a licensee has been convicted of an offense listed in Section 1A–5(a)(10)(A) for which the time period required in Section 1A–5(a)(10)(B) has not elapsed;

(6) on two or more occasions within a 12–month period, a person or persons committed an offense occurring in or on the licensed premises of a crime listed in Section 1A–5(a)(10)(A), for which a conviction has been obtained, and the person or persons were employees of the sexually oriented business at the time the offenses were committed;

(7) a licensee or an employee has knowingly allowed any act of sexual intercourse, sodomy, oral copulation, masturbation, or sexual contact to occur in or on the licensed premises. The term "sexual contact" shall have the same meaning as it is defined in Section 21.01, Texas Penal Code; or

(8) a licensee is delinquent in payment to the county for hotel occupancy taxes, ad valorem taxes, or sales taxes related to the sexually oriented business.

(c) The fact that a conviction is being appealed shall have no effect on the revocation of the license.

(d) Subsection (b)(7) does not apply to adult motels as a ground for revoking the license unless the licensee or employee knowingly allowed the act of sexual intercourse, sodomy, oral copulation, masturbation, or sexual contact to occur in a public place or within public view.

(e) When the county director of public works revokes a license, the revocation shall continue for one year and the licensee shall not be issued a sexually oriented business license for one year from the date revocation became effective. If, subsequent to revocation, the county director of public works finds that the basis for the revocation has been corrected or abated, the applicant may be granted a license if at least 90 days have elapsed since the date the revocation became effective. If the license was revoked under Subsection (b)(5), an applicant may not be granted another license until the appropriate number of years required under Section 1A–5(a)(10)(B) has elapsed.

SEC. 1A–11. *APPEAL.*

If the county director of public works denies the issuance of a license, or suspends or revokes a license, he shall send to the applicant, or licensee, by certified mail, return receipt requested, written notice of his action and the right to an appeal. The aggrieved party may appeal the decision of the county director of public works to a district court in this county on a trial de novo basis. Filing an appeal in a district court stays the county director of public works in suspending or revoking a license until the district court makes a final decision. All decisions of the county director of public works become final within thirty (30) days.

SEC. 1A–12. *TRANSFER OF LICENSE.*

(a) A licensee shall not transfer his license to another, nor shall a licensee operate a sexually oriented business under the authority of a license at any place other than the address designated in the application.

SEC. 1A–13. *LOCATION OF SEXUALLY ORIENTED BUSINESSES.*

(a) A person commits an offense if he operates or causes to be operated a sexually oriented business within 1,000 feet of:

(1) a church or place of religious worship;

(2) a public or private elementary or secondary school;

(3) a child care facility;

(4) a boundary of residential district as defined in this order;

(5) a public park;

(6) the property line of a lot devoted to a residential use as defined in this order; or

(7) another sexually oriented business which does not have a common entrance with one.

(b) A person commits an offense if he causes or permits the operation, establishment, substantial enlargement, or transfer of ownership or control of a sexually oriented business within 1,000 feet of another sexually oriented business.

(c) A person commits an offense if he causes or permits the operation, establishment, or maintenance of more than one sexually oriented business in the same building, structure, or portion thereof, or the increase of floor area of any sexually oriented business in any building, structure, or portion thereof containing another sexually oriented business.

(d) For the purposes of Subsection (a), measurement shall be made in a straight line, without regard to intervening structures or objects, from the nearest portion of the building or structure used as a part of the premises where a sexually oriented business is conducted, to the nearest property line of the premises of a church or place of religious worship, or public or private elementary or secondary school, or to the nearest boundary of an affected public park, residential district, or residential lot.

(e) For purposes of Subsection (b) of this section, the distance between any two sexually oriented businesses shall be measured in a straight line, without regard to intervening structures or objects, from the closest exterior wall of the structure in which each business is located.

(f) Any sexually oriented business lawfully operating that is in violation of Subsections (a), (b), or (c) of this section shall be deemed a nonconforming use. Such use will be permitted to continue for a period not to exceed one year, unless sooner terminated for any such reason or voluntarily discontinued for a period of 30 days or more. Such nonconforming uses shall not be increased, enlarged, extended or altered except that the use may be changed to a conforming use. If two or more sexually oriented business are within 1,000 feet of one another and otherwise in a permissible location, the sexually oriented business which was first established and continually operating at a particular location is the conforming use and the later-established business(es) is nonconforming.

(g) A sexually oriented business lawfully operating as a conforming use is not rendered a nonconforming use by the location, subsequent to the grant or renewal of the sexually oriented business license, of a church or place of religious worship, public or private elementary or secondary school, public park, residential district, or residential lot within 1,000 feet of the sexually oriented business. This provision applies only to the renewal of a valid license, and does not apply when an application for a license is submitted after a license has expired or has been revoked.

(h) All locational requirements of this section must be approved by the county director of public works within sixty (60) days from the time the application is filed.

SEC. 1A–14. *EXEMPTION FROM LOCATION RESTRICTIONS.*

(a) If the county director of public works denies the issuance of a license to an applicant because the location of the sexually oriented business establishment is in violation of Section 1A–13 of this order, then the applicant may, not later than 10 calendar days after receiving notice of the denial, file with the county judge a written request for an exemption from the locational restrictions of Section 1A–13.

(b) If the written request is filed with the county judge within the 10–day limit, a permit and license appeal board shall consider the request. The county judge shall set a date for the hearing within 60 days from the date the written request is received. A board shall consist of five residents of Denton County, one from each of the commissioners precincts as appointed by the precinct commissioners and one appointed by the county judge. Each board member will serve a one (1) year term, with the chairperson of the board being appointed by a majority vote of the five (5) member board.

(c) A hearing by the board may proceed if at least three of the board members are present. The board shall hear and consider evidence offered by any interested person. The formal rules of evidence do not apply.

(d) The permit and license appeal board may, in its discretion, grant an exemption from the locational restrictions of Section 1A–13 if it makes the following findings:

(1) that the location of the proposed sexually oriented business will not have a detrimental effect on nearby properties or be contrary to the public safety or welfare;

(2) that the granting of the exemption will not violate the spirit and intent of this order;

(3) that the location of the proposed sexually oriented business will not downgrade the property values or quality of life in the adjacent areas or encourage the development of urban blight;

(4) that the location of an additional sexually oriented business in the area will not be contrary to any program of neighborhood conservation nor will it interfere with any efforts of renewal or restoration; and

(5) that all other applicable provisions of this order will be observed.

(e) The board shall grant or deny the exemption by a majority vote. Failure to reach a majority vote shall result in denial of the exemption. Disputes of fact shall be decided on the basis of a preponderance of the evidence. Decisions of the permit and license appeal board are appealable to a district court of this county. Appeals from the permit and license appeal board must be made in writing to a district court of this county within thirty (30) days from the date of the final decision of the appeal board. After thirty (30) days, all decisions of the permit and appeal board become final.

(f) If the board grants the exemption, the exemption is valid for one year from the date of the board's action. Upon the expiration of an exemption, the sexually oriented business is in violation of the locational restrictions of Section 1A–13 until the applicant applies for and received another exemption.

(g) If the board denies the exemption, the applicant may not re-apply for an exemption until at least 12 months have elapsed since the date of the board's action.

(h) The grant of an exemption does not exempt the applicant from any other provisions of this order other than the locational restrictions of Section 1A–13.

SEC. 1A–15. *ADDITIONAL REGULATIONS FOR ESCORT AGENCIES.*

(a) An escort agency shall not employ any person under the age of 18 years.

(b) A person commits an offense if he acts as an escort or agrees to act as an escort for any person under the age of 18 years.

SEC. 1A–16. *ADDITIONAL REGULATIONS FOR NUDE MODEL STUDIOS.*

(a) A nude model studio shall not employ any person under the age of 18 years.

(b) A person under the age of 18 years commits an offense if he appears in a state of nudity in or on the premises of a nude model studio. It is a defense to prosecution under this subsection if the person under 18 years was in a restroom not open to public view or persons of the opposite sex.

(c) A person commits an offense if he appears in a state of nudity or knowingly allows another to appear in a state of nudity in an area of a nude model studio premises which can be viewed from the public right of way.

(d) A nude model studio shall not place or permit a bed, sofa, or mattress in any room on the premises, except that a sofa may be placed in a reception room open to the public.

SEC. 1A–17. *ADDITIONAL REGULATIONS FOR ADULT THEATERS AND ADULT MOTION PICTURE THEATERS.*

(a) A person commits an offense if he knowingly allows a person under the age of 18 years to appear in a state of nudity in or on the premises of an adult theater or adult motion picture theater.

(b) A person under the age of 18 years commits an offense if he knowingly appears in a state of nudity in or on the premises of an adult theater or adult motion picture theater.

(c) It is a defense to prosecution under Subsections (a) and (b) of this section if the person under 18 years was in a restroom not open to public view or persons of the opposite sex.

SEC. 1A–18. *ADDITIONAL REGULATIONS FOR ADULT MOTELS.*

(a) Evidence that a sleeping room in a hotel, motel or similar commercial establishment has been rented and vacated two or more times in a period of time that is less than 10 hours creates a rebuttable presumption that the establishment is an adult motel and that term is defined in this order.

(b) A person commits an offense if, as the person in control of a sleeping room in a hotel, motel, or similar commercial establishment that does not have a sexually oriented business license, he rents or subrents a sleeping room to a person and, within 10 hours from the time the room is rented, he

rents or subrents the same sleeping room again.

(c) For purposes of Subsection (b) of this section, the terms "rent" and "subrent" mean the act of permitting a room to be occupied for any form of consideration.

SEC. 1A–19. *REGULATIONS PERTAINING TO EXHIBITION OF SEXUALLY EXPLICIT FILMS OR VIDEOS.*

(a) A person who operates or causes to be operated a sexually oriented business, other than an adult motel, which exhibits on the premises in a viewing room of less than 150 square feet of floor space, a film, video cassette, or other video reproduction which depicts specified sexual activities or specified anatomical areas, shall comply with the following requirements:

(1) Upon application for a sexually oriented business license, the application shall be accompanied by a diagram of the premises showing a plan thereof specifying the location of one or more manager's stations and the location of all overhead lighting fixtures and designating any portion of the premises in which patrons will not be permitted. A manager's station may not exceed 32 square feet of floor area. The diagram shall also designate the place at which the permit will be conspicuously posted, if granted. A professionally prepared diagram in the nature of an engineer's or architect's blueprint shall not be required; however each diagram should be oriented to the north or to some designated street or object and should be drawn to a designated scale or with marked dimensions sufficient to show the various internal dimensions of all areas of the interior of the premises to an accuracy of plus or minus six inches. The county director of public works may waive the foregoing diagram for renewal applications if the applicant adopts a diagram that was previously submitted and certifies that the configuration of the premises has not been altered since it was prepared.

(2) The application shall be sworn to be true and correct by the applicant.

(3) No alteration in the configuration or location of a manager's station may be made without the prior approval of the sheriff or his designee.

(4) It is the duty of the owners and operator of the premises to ensure that at least one employee is on duty and situated in each manager's station at all times that any patron is present inside the premises.

(5) The interior of the premises shall be configured in such a manner that there is an unobstructed view from a manager's station of every area of the premises to which any patron is permitted access for any purpose excluding restrooms. Restrooms may not contain video reproduction equipment. If the premises has two or more manager's stations designated, then the interior of the premises shall be configured in such a manner that there is an unobstructed view of each area of the premises to which any patron is permitted access for any purpose from at least one of the manager's stations. The view required in this subsection must be by direct line of sight from the manager's station. Viewing booths must be separated at least twelve (12) inches from the exterior walls of any other viewing booths by open space.

(6) It shall be the duty of the owners and operator, and it shall also be the duty of any agents and employees present in the premises to ensure that the area specified in Subsection (5) remains unobstructed by any doors, walls, merchandise, display racks or other materials at all times that any patron is present in the premises and to ensure that no patron is permitted access to any area of the premises which has been designated as an area in which patrons will not be permitted in the application filed pursuant to Subsection (1) of this section.

(7) The premises shall be equipped with overhead lighting fixtures of sufficient intensity to illuminate every place to which patrons are permitted access at an illumination of not less than one (1.0) footcandle as measured at the floor level.

(8) It shall be the duty of the owners and operator and it shall also be the duty of any agents and employees present in the premises to ensure that the illumination described above, is maintained at all times that any patron is present in the premises.

(b) A person having a duty under Subsections (1) through (8) of Subsection (a) above

commits an offense if he knowingly fails to fulfill that duty.

(c) All locational requirements of this section must be approved by the county director of public works within sixty (60) days from the time the application is filed.

SEC. 1A–20. *DISPLAY OF SEXUALLY EXPLICIT MATERIAL TO MINORS.*

(a) A person commits an offense if, in a sexually oriented business establishment open to persons under the age of 17 years, he displays a book, pamphlet, newspaper, magazine, film, or video cassette, the cover of which depicts, in a manner calculated to arouse sexual lust or passion for commercial gain or to exploit sexual lust or perversion for commercial gain, any of the following:

(1) human sexual intercourse, masturbation, or sodomy;

(2) fondling or other erotic touching of human genitals, pubic region, buttocks, or female breasts;

(3) less than completely and opaquely covered human genitals, buttocks, or that portion of the female breast below the top of the areola; or

(4) human male genitals in a discernibly turgid state, whether covered or uncovered.

(b) In this section "display" means to locate an item in such a manner that, without obtaining assistance from an employee of the business establishment:

(1) it is available to the general public for handling and inspection; or

(2) the cover or outside packaging on the item is visible to members of the general public.

SEC. 1A–21. *DEFENSES.*

(a) It is a defense to prosecution under Section 1A–4(a), 1A–13, or 1A–16(d) that a person appearing in a state of nudity did so in a modeling class operated:

(1) by a proprietary school licensed by the state of Texas; a college, or university supported entirely or partly by taxation;

(2) by a private college or university which maintains and operates educational programs in which credits are transferrable to a college, junior college, or university supported entirely or partly by taxation; or

(3) in a structure:

(A) which has no sign visible from the exterior of the structure and no other advertising that indicates a nude person is available for viewing; and

(B) where in order to participate in a class a student must enroll at least three days in advance of the class; and

(C) where no more than one nude model is on the premises at any one time.

(b) It is a defense to prosecution under Section 1A–4(a) or Section 1A–13 that each item of descriptive, printed, film, or video material offered for sale or rental, taken as a whole, contains serious literary, artistic, political, or scientific value.

SEC. 1A–22. *ENFORCEMENT.*

(a) As stated in Chapter 243 of the Local Government Code of Texas, the county may sue in district court for an injunction to prohibit the violation of a regulation of this order.

(b) As stated in Chapter 243 of the Local Government Code of Texas, an offense under this subsection is a Class A misdemeanor.

SEC. 1A–23. *SEVERABILITY.*

The terms, provisions, and conditions of this order are severable.

SEC. 1B–1. *TIME OF EFFECT.*

This order takes effect at 12:00 p.m. one day following its adoption.

PASSED and APPROVED this the 5th day of February, 1990.

/s/ Vic Burgess
Judge Vic Burgess

/s/ Buddy Cole
Commissioner Buddy Cole

/s/ Sandy Jacobs
Commissioner Sandy Jacobs

/s/ Lee Walker
Commissioner Lee Walker

/s/ Don Hill
Commissioner Don Hill

*ON PETITION FOR REHEARING*

July 26, 1994

Before GOLDBERG, HIGGINBOTHAM, and EMILIO M. GARZA, Circuit Judges.

PER CURIAM:

TK's Video, Inc. challenged on First Amendment grounds a Denton County order regulating adult businesses. The district court found certain provisions unconstitutional, severed them, and upheld the rest. We found only one remaining constitutional infirmity. *See TK's Video, Inc. v. Denton County*, 24 F.3d 705 (5th Cir.1994). We concluded that the county's order did not guarantee to an adult business operating on the effective date of the ordinance that the status quo would be maintained prior to a final licensing decision, as required by *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 227–30, 110 S.Ct. 596, 605–07, 107 L.Ed.2d 603 (1990). We remanded the case to the district court with the instruction to enter judgment declaring that until the Director of Public Works makes a final licensing decision, a license applicant in business on the effective date of the order cannot be regulated by the order.

 TK's petitions for rehearings alleging that we directed the district court to engraft this procedural safeguard directly onto the Denton County order in violation of *Universal Amusement Co. v. Vance*, 587 F.2d 159, 172 (5th Cir.1978) (en banc), *aff'd*, 445 U.S. 308, 100 S.Ct. 1156, 63 L.Ed.2d 413 (1980), instead of striking down the order altogether. The objection focuses on language in *Universal Amusement Co.* stating that federal courts cannot rewrite Texas statutes to incorporate the kind of procedural safeguards mentioned in *FW/PBS*. TK's alleges that our instruction to the district court amounts to a rewriting of the Denton County order at odds with the original legislative intent behind the order.

TK's is mistaken. We held that the county cannot prior to a final licensing decision constitutionally regulate under the order by altering the status quo of a license applicant in business on the effective date of the order. Any rewriting of the Denton County order to meet constitutional requirements has been left to the Denton County authorities. Our grant of declaratory relief will support an injunction by the district court to enforce its terms if the other requisites of injunctive relief are shown. That is, TK's could obtain protection should it need to do so—from any threat to enforce before the final licensing decision, provided TK's has made application for a license. Implicit in our ruling is a rejection of any contention that this omission in the statute renders it facially invalid. To the contrary, the omission appears to present risk only to TK's.

 TK's also notes that although we found that the Denton County order was constitutionally deficient in one respect, we did not award attorney's fees for work done on the appeal. We agree that TK's has prevailed on a significant constitutional issue on appeal, but leave to the district court the determination of the proper amount of attorney's fees.

The petition for rehearing is denied.